# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Rural Development Innovations Limited,**<br>Plot 9635 Central Street Chudleigh<br>Lusaka, Zambia<br><br>**Paul Olson,**<br>Address omitted pursuant to Local Civil Rule 5.1(c), and<br><br>**Solomon Chi**,<br>Address omitted pursuant to Local Civil Rule 5.1(c)<br><br><br>            Plaintiffs,<br><br>**v.**<br><br>**Pete Marocco**, in his purported official capacities as Acting Chair of the Board of the United States African Development Foundation and President of the United States African Development Foundation,<br>1400 I Street NW<br>Washington, DC 20005,<br><br>**Sergio Gor,** in his official capacity as Director of the White House Presidential Personnel Office, 1600 Pennsylvania Avenue NW Washington, DC 20500,<br><br>**U.S. DOGE Service,** 736 Jackson Place, N.W. Washington, D.C. 20503,<br><br>**U.S. DOGE Service Temporary Organization,** 736 Jackson Place, N.W. Washington, D.C. 20503, | Civil Case No. _____<br><br>**Complaint for Declaratory and Injunctive Relief** |

**Amy Gleason,** in her official capacity as the Acting Administrator of U.S. DOGE Service and U.S. DOGE Service Temporary Organization, 736 Jackson Place, N.W. Washington, D.C. 20503,

**Stephen Ehikian,** in his official capacity as Acting Administrator of the U.S. General Services Administration, 1800 F Street NW Washington, DC 20405,

**Scott Bessent,** in his official capacity as Secretary of the Treasury, 1500 Pennsylvania Ave. NW Washington, DC 20220,

**Douglas J. Burgum**, in his official capacity as Secretary of the Interior. 1849 C Street, NW Washington, DC 20240,

and

**Donald J. Trump,** in his official capacity as President of the United States of America, 1600 Pennsylvania Avenue NW Washington, DC 20500,

Defendants**.**

## INTRODUCTION

1.      The United States African Development Foundation (USADF) is a congressionally created agency. It has been charged with Congress with performing development assistance activities "to strengthen the bonds of friendship and understanding between the people of Africa and the United States"; "to support self-help activities at the local level designed to enlarge opportunities for community

development"; "to stimulate and assist effective and expanding participation of Africans in their development process"; and "to encourage the establishment and growth of development institutions which are indigenous to particular countries in Africa and which can respond to the requirements of the poor in those countries." 22 U.S.C. § 290h-2(a). USADF fulfills these purposes by using congressionally appropriated funds to award grants to partners in Africa.

2.      The management of USADF is vested in its Board of Directors, which consists of seven members appointed by the President, with the advice and consent of the Senate. 22 U.S.C. § 290h-5(a). The Board of Directors is responsible for appointing a President of USADF. 22 U.S.C. § 290h-5(f). No provision of law authorizes the appointment of acting members of USADF's Board of Directors, absent Senate confirmation, and no provision of law authorizes an entity other than the Board to appoint the agency's President.

3.      Despite the clear statutory requirement that USADF "shall have perpetual succession unless dissolved by an Act of Congress," 22 U.S.C. § 290h-4(a)(1), Defendants are dead-set on shuttering the agency.

4.      On February 21, President Trump issued an Executive Order describing USADF as "unnecessary" and directing that the agency be reduced to its minimum statutory functions. The Trump Administration then purported to appoint Pete Marocco as the "Acting Chair" of USADF. In that capacity, Marocco purported to hold a meeting of the Board of Directors. He was the only participant in that meeting, at which he purported to appoint himself the President of USADF.

5.      Marocco then claimed to exercise the powers of the Board of Directors and of the President of USADF by terminating almost all of the agency's grants and contracts, by terminating the employment of almost all of the agency's staff, and by rendering it impossible for the agency's remaining staff to communicate with its few remaining contractors and grantees. In sum, Marocco has destroyed the ability of USADF to perform its congressionally assigned mission.

6.      Marocco lacked the authority to perform any of these actions, because he has not been legally appointed as a member of the Board of USADF or as the agency's President. He is legally a stranger to USADF, and each of his actions taken in an attempt to destroy the agency are void ab initio.

7.      Plaintiff Rural Development Innovations is a consulting firm based in Lusaka, Zambia, which offers technical support to small businesses including women- and youth-led enterprises. RDI receives 100% of its funding from USADF and has been awarded a USADF grant that continues through 2028. Yet in April 2025, RDI received notice from Pete Marocco that its grant was being terminated immediately because RDI somehow no longer satisfied USADF's priorities. As a result, RDI will be forced to shut down entirely by the end of June 2025.

8.      Plaintiffs Paul Olson and Solomon Chi have been long-time employees of USADF—dedicating their professional lives to USADF's mission. In March 2025, the employees received a letter from Pete Marocco that they were being put on administrative leave. Two weeks later, the employees received a second letter stating that Marocco "regret[ted] to inform" each employee that they were "affected by a

reduction in force (RIF) action." According to Marocco, the RIF was "necessary for workforce reshaping" of USADF. Each RIF was effective 30 days later (despite the legal standard being 60 days).

9.    Absent timely relief from this Court, Plaintiffs will suffer irreparable harm. RDI will not only be forced to shutter entirely, it will unlikely be able to pay its employees the separation costs they are due under Zambian law. The employees of USADF have not only lost their livelihoods, if they succeed on the merits without preliminary injunctive relief, a final judgment will be a pyrrhic victory. Because Defendants are shuttering USADF in all but name, by the time this Court could issue a final judgment, there would be nothing left for Plaintiffs to return to. The Court should declare Defendants' actions ultra vires and preliminarily and permanently enjoin Defendants from outright ignoring the law in their attempts to shut down USADF.

## JURISDICTION AND VENUE

10.    This Court has federal-question jurisdiction under 28 U.S.C. § 1331. Plaintiffs allege violations of the United States Constitution, the Federal Vacancies Reform Act, 5 U.S.C. § 3345 *et seq.*, the African Development Foundation Act, 22 U.S.C. § 290h-1 *et seq.*, and the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.*

11.    Venue is proper under 28 U.S.C. § 1391(e)(1), because all defendants reside in this district, and because a substantial part of the events or omissions giving rise to the claim occurred in this district.

12.    This Court has the authority to grant the relief requested by Plaintiffs under Rules 57 and 65 of the Federal Rules of Civil Procedure, under the Declaratory

Judgment Act, 28 U.S.C. §§ 2201 and 2202 *et seq*., under the Administrative Procedure Act, 5 U.S.C. § 701, *et seq*., under the Mandamus Act, 28 U.S.C. § 1361, and under the Court's inherent equitable authority.

## PARTIES

13.    Plaintiff Rural Development Innovations (RDI) is a consulting firm based in Lusaka, Zambia, which offers technical support to micro small and medium size enterprises, including farmers' cooperatives, women and youth led enterprises, associations, and various community-based organizations. It also offers program and project management services to development partners. It is a local technical partner for the United States African Development Foundation. RDI is led by a team of qualified Zambian nationals with expertise in different fields. RDI offers clients broad expertise in financial management, enterprise development, organizational capacity development, strategy development and implementation, project management, marketing and market access development. In partnership with USADF, RDI aims to improve the livelihoods of low-income communities in Zambia by providing demand driven innovative solutions to enterprises through technical training and business development services.

14.    Plaintiff Paul Olson has been an employee of USADF since 1991. He was subject to a reduction in force on March 31, 2025, and, as a result, his employment formally ended on April 30, 2025.

15.    Plaintiff Solomon Chi has been an employee of USADF since 2010. He was subject to a reduction in force on March 31, 2025, and, as a result, his employment formally ended on April 30, 2025.

16.     Defendant Pete Marocco purports to be the Acting Chair of the Board of USADF and the President of USADF, but his purported appointment to that position was *ultra vires*.

17.     Defendant Sergio Gor is the Director of the White House Presidential Personnel Office.

18.     Defendant U.S. DOGE Service is an entity that was created within the Executive Office of the President by Executive Order 14158.

19.     Defendant U.S. DOGE Service Temporary Organization is an entity that was created within the Executive Office of the President by Executive Order 14158.

20.     Defendant Amy Gleason is the Acting Administrator of U.S. DOGE Service and U.S. DOGE Service Temporary Organization.

21.     Defendant Scott Bessent is the Secretary of the Treasury.

22.     Defendant Douglas J. Burgum is the Secretary of the Interior

23.     Defendant Donald J. Trump is the President of the United States.

## LEGAL BACKGROUND

### The Appointments Clause

24.     The Appointments Clause of the United States Constitution provides that: "[The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think

7

proper, in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const., art. II, § 2, cl. 2.

25.    "Only the President, with the advice and consent of the Senate, can appoint . . . 'principal' officers." *United States v. Arthrex, Inc.*, 594 U.S. 1, 12 (2021).

26.    But "the Appointments Clause permits Congress to dispense with joint appointment . . . for inferior officers. Congress may vest the appointment of such officers 'in the President alone, in the Courts of Law, or in the Heads of Departments.'" *Id.* at 12-13 (internal citation omitted).

## Federal Vacancies Reform Act

27.    The Federal Vacancies Reform Act (FVRA) describes certain circumstances under which Congress has delegated to the President a limited authority to appoint acting officials. *See* 5 U.S.C. §§ 3345-3346.

28.    These provisions "are the exclusive means for temporarily authorizing an acting official to perform the functions and duties of any office of an Executive agency . . . for which appointment is required to be made by the President, by and with the advice and consent of the Senate," unless another "statutory provision expressly" authorizes the President or another official to appoint an acting official or such a provision itself expressly designates an acting official, or the President validly makes a recess appointment. 5 U.S.C. § 3347(a).

29.    Congress enacted the FVRA "to ensure the exclusivity of the applicability of the Vacancies Act." S. Rep. No. 105-250, at 11 (1998).

30.     The FVRA does not extend to the President the limited grant of appointment authority to vacancies arising in boards "composed of multiple members" and boards that control a "Government corporation." 5 U.S.C. § 3349c(1).

31.     Any action taken by a person who purports to be an acting member "in the performance of any function or duty of a vacant office to which" the FVRA applies "shall have no force or effect," 5 U.S.C. § 3348(d)(1), and "may not be ratified." 5 U.S.C. § 3348(d)(2).

**African Development Foundation Act**

32.     Congress established the United States African Development Foundation as a "body corporate," 22 U.S.C. § 290h-1(a), to fulfill the statutory purposes "to enable the people of African countries to develop their potential, fulfill their aspirations, and enjoy better, more productive lives"; "to strengthen the bonds of friendship and understanding between the people of Africa and the United States"; "to support self-help activities at the local level designed to enlarge opportunities for community development"; "to stimulate and assist effective and expanding participation of Africans in their development process"; and "to encourage the establishment and growth of development institutions which are indigenous to particular countries in Africa and which can respond to the requirements of the poor in those countries." 22 U.S.C. § 290h-2(a).

33.     Congress instructed USADF to carry out these purposes "in cooperation with, and in response to, organizations indigenous to Africa which are representative of the needs and aspirations of the poor in Africa," and directed that USADF shall "to the extent possible, coordinate its development assistance activities with the

activities of the United States Government and private, regional, and international organizations." 22 U.S.C. § 290h-2(b).

34.    To fulfill these statutory purposes, Congress authorized USADF to "make grants, loans, and loan guarantees"—not to exceed $250,000 for any particular project—"to any African private or public group (including public international organizations), association, or other entity engaged in peaceful activities" including "the fostering of local development institutions," "the development of self-evaluation techniques by participants in projects supported" by USADF, "development research by Africans and the transfer of development resources," and "the procurement of such technical or other assistance as is deemed appropriate by the recipient of such grant, loan, or guarantee." 22 U.S.C. § 290h-3(a).

35.    Congress directed that "the Foundation shall give priority to projects which community groups undertake to foster their own development and in the initiation, design, implementation, and evaluation of which there is the maximum feasible participation of the poor." 22 U.S.C. § 290h-3(b).

36.    Congress specified that USADF, "as a corporation," "shall have perpetual succession unless dissolved by an Act of Congress." 22 U.S.C. § 290h-4(a)(1).

37.    Congress empowered USADF to "prescribe, amend, and repeal such rules and regulations as may be necessary for carrying out the functions of the Foundation"; to "make and perform such contracts and other agreements with any individual, corporation, or other private or public entity however designated and

wherever situated, as may be necessary for carrying out the functions of the Foundation"; and to "determine and prescribe the manner in which its obligations shall be incurred and its expenses allowed and paid[.]" 22 U.S.C. § 290h-4(a).

38.    The management of USADF is vested in a board of directors, composed of seven members appointed by the President, by and with the advice and consent of the Senate. 22 U.S.C. § 290h-5(a). All members of the Board shall be appointed "on the basis of their understanding of and sensitivity to community level development processes." *Id.* Members of the Board shall be appointed so that no more than four members of the Board are members of any one political party. *Id.*

39.    The Board of USADF manages the entity through the appointment of a President and an Advisory Council. 22 U.S.C. § 290h-5(d), (e).

40.    Congress has appropriated to USADF, "[f]or necessary expenses to carry out the African Development Foundation Act," $45 million to remain available until September 30, 2025. Further Consolidated Appropriations Act, 2024, Pub. L. No. 118-47, Div. F, tit. III, 138 Stat. 460, 746 (2024).

41.    Congress prohibited USADF from using any appropriated funds to "implement a reorganization, redesign, or other plan," that would "expand, eliminate, consolidate, or downsize covered departments, agencies, or organizations" or "expand, eliminate, consolidate, or downsize the United States official presence overseas," without first consulting with the Appropriations Committees of both houses and providing a detailed justification for any such plan. *Id.*, § 7063(a), (b), 138 Stat. at 843-44.

## FACTUAL ALLEGATIONS

### USADF's structure and work

42.    USADF was "established by Congress to invest directly in African grassroots enterprises and social entrepreneurs." United States African Development Foundation, www.usadf.gov [https://perma.cc/N5BB-4RP6] (last accessed Mar. 5, 2025). USADF provides grant funds, among other resources, "to develop, grow and scale African enterprises and entrepreneurs who improve lives and livelihoods." *Id.* "USADF's investments increase incomes, revenues, and jobs by promoting self-reliance and market-based solutions to poverty." *Id.* USADF works with partners in 22 African countries, focusing on "populations least served by existing markets or assistance programs" with the goal of helping them "transition out of poverty." *Id.*

*43.*    In fiscal year 2024, USADF made significant investments to drive growth in key sectors, including $16.56 million across 114 grants enhancing agriculture, $7.37 million across 34 grants expanding off-grid energy access, and $4.19 million across 94 grants advancing youth and women entrepreneurship. *Id.*

### February 19 Executive Order

44.    On February 19, President Trump signed an executive order titled "Commencing the Reduction of the Federal Bureaucracy." Exec. Order No. 14217, 90 Fed. Reg. 10577 (Feb. 19, 2025).

45.    The purpose of the executive order is to "reduce the size of the Federal Government," especially the elements "that the President has determined are unnecessary."

46.    The executive order list federal entities that "shall be eliminated to the maximum extent consistent with applicable law, and such entities shall reduce the performance of their statutory functions and associated personnel to the minimum presence and function required by law."

47.    The executive order lists USADF as one of the targeted entities.

48.    Under the executive order, "the head of each unnecessary governmental entity" has 14 days to submit a report to the Director of the Office of Management and Budget "confirming compliance with this order and stating whether the governmental entity, or any components or functions thereof, are statutorily required and to what extent."

49.    In response to the reports submitted by targeted entities, "the OMB Director or the head of any executive department or agency charged with reviewing grant requests by such entities shall, to the extent consistent with applicable law and except insofar as necessary to effectuate an expected termination, reject funding requests for such governmental entities to the extent they are inconsistent with this order."

50.    The executive order "shall [not] be construed to impair or otherwise effect," among other things, "the authority granted by law to an executive department, agency, or the head thereof" and "shall be implemented consistent with applicable law and subject to the availability of appropriations."

**Defendants' invalid attempt to appoint Marocco**

51.    On February 28, 2025, Trent Morse of the Presidential Personnel Office sent USADF management an email asserting that, because USADF was "Board-less," Pete Marocco had been appointed as Acting Chair of the Board of USADF.

52.    On March 6, Marocco, in his purported capacity as Acting Chair, held what he characterized as a meeting of the Board of USADF. No other member of the Board of USADF was in attendance. Marocco made a motion to appoint himself as the President of USADF. Marocco cast a vote in favor of his own motion. As Marocco was the only purported member of the Board in attendance, he declared that his motion had been adopted and he declared himself to be the President of USADF.

53.    Since that date, Marocco and other agents of Defendants have repeatedly referred to Marocco as the Acting Chair or the President of USADF and have attempted to exercise the agency's authorities by virtue of the claim that Marocco holds those positions.

54.    On March 13, the Interior Business Center (IBC) of the Department of the Interior informed USADF management that on March 6, a member of DOGE staff, Nate Cavanaugh, sent a request to access USADF staff human resources files which include salary information, tenure, and personally identifiable information. The request via email was copied to Marocco and DOGE staff member Ethan Shaotran.

55.    IBC further stated that on March 6, Cavanaugh had informed IBC staff that the request comes directly from Marocco and referred to Marocco as the current Chair of the USADF board.

56.    IBC requested documentation of the appointment of Marocco as Acting Chairman and President of USADF. On March 12, IBC received the completed form signed by Marocco as "Chairman," requesting access to all HR systems for USADF.

57.    On March 13, IBC provided access to USADF human resources data to Marocco, while specifying the privacy concerns attached to these files.

58.    On March 17, five USADF junior and mid-level staff members received the same email from a staff member of the U.S. DOGE Service, Justin Fox, requesting access to USADF human resources data. Fox stated that he was reaching out on behalf of Marocco in his capacity as Acting President of USADF. He further stated that Marocco would like USADF staff to help with accessing USADF's grants system. At 8:44 p.m., on March 31, three employees of USADF received emails from Marocco, who identified himself as "Acting President and CEO, USADF," informing these employees that they were being terminated from their employment with USADF under a reduction in force (RIF), with an effective date of April 30. The emails attached a memorandum, also from Marocco in his purported capacity as Acting President and CEO, stating that "[t]his RIF is necessary for workforce reshaping of the United States African Development Foundation."

59.    On April 7, fourteen employees of USADF received emails from Marocco, who identified himself as "Acting President and CEO, USADF," informing these employees that they were being terminated from their employment with USADF as part of a reduction in force, with an effective date of May 7. The emails to these fourteen employees, like the emails of March 31, attached a memorandum, also from

Marocco in his purported capacity as Acting President and CEO, stating that "[t]his RIF is necessary for workforce reshaping of the United States African Development Foundation."

60.     Two additional employees of USADF accepted offers to participate in the Deferred Resignation Program.

61.     With these resignations, as well as the termination of the employment of seventeen employees that Marocco announced on March 31 and April 7, USADF has been reduced to ten employees (not counting three employees of the U.S. DOGE Service who have been detailed to USADF on Marocco's orders). Marocco placed almost all of these ten employees on administrative leave, leaving just two to carry out the entirety of USADF's work.

62.     USADF also employed contract personnel. Marocco has cancelled these contracts, effective immediately, resulting in the termination of seven contractors in the Washington D.C. area, and the termination of fifteen country-program coordinators—that is, foreign nationals who have served USADF on a contract basis to perform local oversight activities on behalf of the agency.

63.     In addition to contracts with country-program coordinators, USADF has retained the services of local representatives in nineteen countries through partner grants. Recipients of partner grants have performed services for USADF including project design, program development, oversight, training, monitoring, and evaluation. Marocco exercised his purported authority as Acting Chair and President of USADF to instruct the Department of the Treasury to terminate almost all of

USADF's partner grants, effective immediately. The Department of the Treasury complied with Marocco's instruction. As a result, three of USADF's partner grants (at most) have not been terminated. Whether the grants remain in place or not, these grantees depend on interaction with country-program coordinators to perform services on behalf of USADF. Because all the agency's country-program coordinators have been terminated, the recipients of partner grants no longer have the means to perform services for the agency.

64.     As a result, USADF no longer has any personnel in Africa, either employed directly by the agency or performing services under a contract or grant, who are able to perform grant-implementation services for USADF.

65.     The remaining employees, all of whom are based domestically, cannot perform the statutory functions of USADF. To administer grants to partners in Africa that fulfill the purposes that Congress has directed USADF to fulfill in 22 U.S.C. §§ 290h-2 and 290h-3, USADF personnel must be able to perform portfolio management and oversight duties including the solicitation and review of quarterly reports from grantees, as well as the review of disbursement requests, site-visit reports, project audits, work plans and performance assessments, implementation-related amendments, and grant close outs.

66.     In addition, USADF personnel must be able to perform annual portfolio reviews to evaluate performance indicators of all active grants, including the grading of these grants based on project-specific performance indicators.

67.     USADF personnel must also be able to conduct quarterly meetings with, and reports to, strategic government partners in six countries as well as private-sector partners in four countries.

68.     To comply with Congressional instructions to devote $45 million to grants to African partners through September 30, 2025, USADF personnel must also be able to perform activities relating to the awarding of new grants, including the solicitation of grant proposals, the screening of thousands of applicants for eligibility and fit, and the performance of preliminary site visits to hundreds of potential grantees in over twenty countries.

69.     As a matter of due diligence, USADF must also be able to review business-registration requirements; review corporate documentation, including documents of incorporation and financial statements; and perform identity checks of shareholders and boards of directors.

70.     For successful grant applicants, USADF personnel must also be able to complete project design and development of the grants, including market analyses, technology assessments, budget and financial analyses, and environmental screening reports.

71.     USADF personnel must also be able to perform notifications and coordination with United States embassies in more than twenty countries; manage USADF assets located abroad including vehicles, equipment, and offices; and maintain oversight of foreign bank accounts.

72.    USADF staff must also be able to implement and respond to financial audits of the agency conducted by OIG, and GAO.

73.    The remaining employees of USADF personnel cannot perform any of these functions. They cannot perform any of the actions that are necessary to award new grants using the funds that Congress has appropriated for his purpose, and they cannot perform any of the actions that are necessary for effective implementation and oversight of the agency's existing grants. Indeed, the remaining employees do not have the capability to establish contact with USADF's existing grantees.

74.    USADF no longer has the capability to pay amounts remaining to be disbursed on these grants, to coordinate with foreign partners to arrange the payment of amounts those partners have pledged in matching funds, or to maintain basic functions of oversight to ensure that grantees are performing their functions consistently with the terms and conditions of each grant. As a result, every grant of USADF has effectively been terminated, even if some grants continue to appear on the agency's records as active.

## CLAIMS FOR RELIEF

## COUNT I

## Ultra vires—violation of the Federal Vacancies Reform Act

75.    Plaintiffs restate and reallege all paragraphs above as if fully set forth here.

76.    Marocco's purported appointment as acting Chair of the Board of USADF is ultra vires. The Federal Vacancies Reform Act (FVRA) describes certain circumstances under which Congress has delegated to the President this limited

authority to appoint acting officials. *See* 5 U.S.C. §§ 3345-3346; *Nat'l Lab. Rels. Bd. v. SW. Gen.*, 580 U.S. 288, 294-96 (2017). These provisions "are the exclusive means for temporarily authorizing an acting official to perform the functions and duties of any office of an Executive agency . . . for which appointment is required to be made by the President, by and with the advice and consent of the Senate," unless another "statutory provision expressly" authorizes the President or another official to appoint an acting official or such a provision itself expressly designates an acting official, or the President validly makes a recess appointment. 5 U.S.C. § 3347(a).

77.    The FVRA does not extend to the President this limited grant of appointment authority to vacancies arising in boards "composed of multiple members" and boards that control a "Government corporation." 5 U.S.C. § 3349c(1).

78.    The United States African Development Foundation is governed by a nonpartisan seven-member board, and it operates as a government corporation. 22 U.S.C. §§ 290h-4(b), 290h-5(a)(1).

79.    Any action taken by a person who purports to be an acting member of USADF's Board "in the performance of any function or duty of a vacant office to which" the FVRA applies "shall have no force or effect," 5 U.S.C. § 3348(d)(1), and "may not be ratified," 5 U.S.C. § 3348(d)(2).

80.    As a result, any action taken by Marocco purporting to be a member of the Board—including appointing himself as President and CEO—has no force or effect and may not be ratified.

**COUNT II**

**Ultra vires—violation of the African Development Foundation Act**

81.     Plaintiffs restate and reallege all paragraphs above as if fully set forth here.

82.     Marocco's purported appointment as acting Chair of the Board of USADF is ultra vires. The African Development Foundation Act requires that the Board be appointed "by and with the advice and consent of the Senate." 22 U.S.C. § 290h-5(a)(1). Marocco has not been nominated by the President or confirmed by the Senate to a seat on the Board of USADF. No provision of law authorizes the President to appoint an acting member of the Board of USADF.

83.     Marocco's purported appointment as President of USADF is ultra vires. Only the Board of USADF holds the authority to appoint the President of USADF. 22 U.S.C. § 290h-5(a)(1). Marocco purported to appoint himself as the President of USADF, but he is not a member of the Board of USADF and he lacked the authority to make such an appointment.

84.     As a result, all the actions that Marocco has taken in his purported authority as Acting Chair of the Board of USADF or as President of USADF, including the termination of USADF's contracts and grants and the termination of the employment of USADF's employees, are ultra vires and violate USADF's organic statute.

85.     Further, Defendants' actions to terminate USADF's contracts and grants, terminate the employment of USADF's employees, and render it impossible for USADF to perform its statutory functions violate USADF's organic statute, 22

21

U.S.C. § 290h *et seq.*, and appropriations statutes under which Congress directed USADF to make expenditures in furtherance of the agency's statutory mission.

## COUNT III

### Ultra vires—violation of Constitutional provisions

86.    Plaintiffs restate and reallege all paragraphs above as if fully set forth here.

87.    The Appointments Clause grants Congress the authority to vest the appointment of inferior officers, such as the President of USADF, in the heads of Departments. Congress has exercised that authority to grant the Board of USADF the exclusive authority to appoint the President of USADF, and the Board of USADF accordingly holds the exclusive authority to remove that officer. Moreover, the Appointments Clause requires the appointment of principal officers, such as the Board of USADF, through the process of Presidential nomination and Senate confirmation. Although Congress has authorized limited departures from that process for certain acting officials, it has not authorized the appointment of acting members of the Board of USADF. The purported appointment of Marocco is in violation of the authorities vested in Congress by the Constitution and further violates the President's duty under article II to "take Care that the Laws be faithfully executed."

88.    The African Development Foundation Act requires that the Board be appointed "by and with the advice and consent of the Senate." 22 U.S.C. § 290h-5(a)(1).

89.    The African Development Foundation Act does not provide any process for filling vacancies with acting board members. 22 U.S.C. § 290h-5(a)(1). Instead, "upon the expiration of his term [of office] a member shall continue to serve until [his] successor is appointed and shall have qualified." 22 U.S.C. § 290h-5(a)(2).

90.    Under the Federal Vacancies Reform Act of 1998, 5 U.S.C. § 3345 *et seq.*, the President can appoint acting heads of agencies in specific, outlined instances. 5 U.S.C. § 3345.

91.    But the President's ability to fill vacancies does not apply to "any member who is appointed by the President, by and with the advice and consent of the Senate to any board, commission, or similar entity that—(A) is composed of multiple members; and (B) governs an independent establishment or Government corporation." 5 U.S.C. § 3349c(1).

92.    "Insofar as Congress has made explicit statutory requirements, they must be observed." *Angelus Milling Co. v. Comm'r of Internal Revenue*, 325 U.S. 293, 296 (1945).

93.    Further, Defendants' actions to terminate USADF's contracts and grants, terminate the employment of USADF's employees, and render it impossible for USADF to perform its statutory functions are in violation of USADF's organic statute, 22 U.S.C. § 290h *et seq.*, and of appropriations statutes under which Congress directed USADF to make expenditures in furtherance of the agency's statutory mission. Defendants' actions thus violate the principle of separation of powers, the

Constitution's vesting of the spending power and the power to legislate in Congress, and the Take Care Clause.

## COUNT IV

### Violation of the Administrative Procedure Act—706(2)(C)
### In excess of statutory jurisdiction, authority, or limitations
### Against defendant agencies

94.    Plaintiffs restate and reallege all paragraphs above as if fully set forth here.

95.    Under the APA, a court shall "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or that is "in excess of statutory jurisdiction, authority, or limitations," 5 U.S.C. § 706(2)(C).

96.    To the extent that Defendants purport to exercise authority with respect to USADF through Marocco's invalid appointment as Acting Chair of the Board of USADF or as President of USADF, those actions are "not in accordance with [the] law," are "contrary to [a] constitutional right, power, privilege, or immunity," and are "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A)-(C).

97.    Further, Defendants' actions to terminate USADF's contracts and grants, terminate the employment of USADF's employees, and render it impossible for USADF to perform its statutory functions are in violation of USADF's organic statute, 22 U.S.C. § 290h *et seq.*, and of appropriations statutes under which Congress directed USADF to make expenditures in furtherance of the agency's statutory mission.

98.    Plaintiffs seek to hold unlawful and set aside such actions, under the Administrative Procedure Act and to compel agency action unlawfully withheld or unreasonably delayed.

## COUNT V

### Declaratory Judgment Act, 28 U.S.C. § § 2201 and 2202

99.    Plaintiffs restate and reallege all paragraphs above as if fully set forth here.

100.    Plaintiffs are entitled to declaratory relief on the basis of all claims identified. There is a substantial and ongoing controversy between Plaintiffs and the Defendants, and a declaration of rights under the Declaratory Judgment Act is both necessary and appropriate to establish that Marocco has not been lawfully appointed to any position within USADF and that his actions in violation of the FVRA, USADF's organic statutes, and appropriations statutes are unlawful.

## COUNT VI

### Writ of Mandamus

101.    Plaintiffs restate and reallege all paragraphs above as if fully set forth here.

102.    In the alternative, Plaintiffs are entitled to a writ of mandamus. The FVRA and African Development Foundation Act imposes a ministerial duty on the President and subordinate officials not to purport to appoint an acting member of the Board of USADF. Plaintiffs are entitled to a writ of mandamus prohibiting Marocco from exercising any authorities purportedly on behalf of USADF and, absent this

Court granting one of the counts identified above, there is no other adequate means of redress.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that this Court:

a.    Declare that Defendant Pete Marocco has not been lawfully appointed as an acting member of the Board of the United States African Development Foundation, as the President of the United States African Development Foundation, or as any other officer of the United States African Development Foundation;

b.    Declare that any actions taken by Defendant Pete Marocco—or by any other persons, under the direction of Marocco's purported authority as an acting member of the Board of the United States African Development Foundation, as the President of the United States African Development Foundation, or as any other officer of the United States African Development Foundation—including Marocco's orders to terminate the United States African Development Foundation's contracts and grants and to terminate the employment of the United States African Development Foundation's employees, are void ab initio and are without force and effect;

c.    Enter a preliminary and permanent injunction ordering that Defendants may not appoint Pete Marocco or any other person as an acting member of the Board of the United States African Development Foundation, and that Defendants may not appoint Pete Marocco or any

26

other person as President of the United States African Development Foundation absent the approval of the Board of the United States African Development Foundation;

d.    Enter a preliminary and permanent injunction ordering the Defendants not to recognize the legal effect of any actions taken by Defendant Pete Marocco under his purported authority as an acting member of the Board of the United States African Development Foundation or as the President of the United States African Development Foundation, including Marocco's actions purporting to terminate the United States African Development Foundation's contracts and grants and to terminate the employment of the United States African Development Foundation's employees;

e.    Award Plaintiffs costs of suit and attorneys' fees and expenses under any applicable law; and

f.    Issue such other relief as the Court deems proper.

May 21, 2025                              Respectfully submitted,


                                         _/s/Bradley Girard_____
                                         Bradley Girard (DC Bar No. 1033743)
                                         Joel McElvain (DC Bar No. 448431)
                                         Robin F. Thurston (DC Bar No. 1531399)
                                         Skye Perryman (DC Bar No. 984573)
                                         Democracy Forward Foundation
                                         P.O. Box 34553
                                         Washington, DC 20043
                                         (202) 448-9090
                                         bgirard@democracyforward.org
                                         jmcelvain@democracyforward.org
                                         rthurston@democracyforward.org
                                         sperryman@democracyforward.org

                                         *Counsel for Plaintiffs*