# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**Rural Development Innovations Limited** *et al.*,

        Plaintiffs,

**v.**

**Pete Marocco** *et al.*,

        Defendants.

**Civil Case No. 25-cv-1631**

## REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

Introduction .................................................................................................. 1

Argument ...................................................................................................... 2

   I.  Plaintiffs have shown a likelihood of success on the merits ............................ 2

     A.  The Federal Vacancies Reform Act prohibits Defendants' actions. ............... 2

     B.  Defendants cannot show any legal authority for their attempts to dismantle USADF. ........................................................................................ 9

     C.  This Court has jurisdiction to hear Plaintiffs' claims .................................. 13

        i.  RDI does not bring contract claims for money damages. ......................... 14

       ii.  The employees do not bring claims under the CSRA. ............................. 17

     D.  Plaintiffs raise viable APA claims. .............................................................. 19

  II.  Plaintiffs are suffering irreparable harm and the balance of equities and public interest favors an injunction. .............................................................. 21

Conclusion .................................................................................................. 23

i

## TABLE OF AUTHORITIES

**Cases**                                                                        **Page(s)**

\* *AIDS Vaccine Advoc. Coal. v. U.S. Dep't of State*,
  No. 25-cv-400, 2025 WL 752378 (D.D.C. Mar. 10, 2025), *appeal
  docketed*, No. 25-5097 (D.C. Cir. Apr. 2, 2025) ............................................13, 14, 16

*Andrade v. Lauer*,
  729 F.2d 1475 (D.C. Cir. 1984) .........................................................................18, 19

*Asylumworks v. Mayorkas*,
  590 F. Supp. 3d 11 (D.D.C. 2022) .............................................................................9

*Augustus v. McHugh*,
  870 F. Supp. 2d 167 (D.D.C. 2012) ...............................................................7, 8, 11

*Aviel v. Gor*,
  No. 25-cv-778, 2025 WL 1009035 (D.D.C. Apr. 4, 2025) ............................. 3, 4, 5, 7

\* *Aviel v. Gor*,
  No. 25-5105, 2025 WL 1600446 (D.C. Cir. June 5, 2025)................................2, 3, 6

*Axon Enter., Inc. v. FTC*,
  598 U.S. 175 (2023) ...................................................................................................18

*Brehm v. Marocco*,
  No. 25-cv-660 (D.D.C. Mar. 11, 2025)......................................................................17

*Califano v. Sanders*,
  430 U.S. 99 (1977) .....................................................................................................18

*Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*,
  38 F.4th 1099 (D.C. Cir. 2022)..................................................................................15

*Dalton v. Specter*,
  511 U.S. 462 (1994) ...................................................................................................12

*Free Enterprise Fund v. Pub. Co. Acct. Oversight Bd.*,
  561 U.S. 477 (2010) ...................................................................................................11

*Freytag v. Comm'r of Internal Revenue*,
  501 U.S. 868 (1991) .....................................................................................................4

\* Authorities principally relied upon are marked with an asterisk

*George v. Ishimaru,*
  849 F. Supp. 68 (D.D.C. 1994), *order vacated and appeal dismissed
  as moot,* No. 94-5111, 1994 WL 517746 (D.C. Cir. Aug. 25, 1994) ........................9

*Huisha-Huisha v. Mayorkas,*
  27 F.4th 718 (D.C. Cir. 2022).................................................................................23

*In re Aiken Cnty.,*
  725 F.3d 255 (D.C. Cir. 2013) ................................................................................11

*Jones v. Hendrix,*
  599 U.S. 465 (2023) ..................................................................................................6

*Larson v. Domestic & Foreign Commerce Corp.,*
  337 U.S. 682 (1949) ................................................................................................12

* *Maine Cmty. Health Options v. United States,*
  590 U.S. 296 (2020) ..........................................................................................16, 17

*Megapulse, Inc. v. Lewis,*
  672 F.2d 959 (D.C. Cir. 1982) ................................................................................15

*Nat'l Ass'n of Immigr. Judges v. Owen,*
  No. 23-2235, 2025 WL 1560373 (4th Cir. June 3, 2025) ........................................19

*NLRB v. SW Gen., Inc.,*
  580 U.S. 288 (2017) ...............................................................................................4, 9

*Noel Canning v. NLRB,*
  705 F.3d 490 (D.C. Cir. 2013), *aff'd,* 573 U.S. 513 (2014) ........................................8

*Open Cmtys. All. v. Carson,*
  286 F. Supp. 3d 148 (D.D.C. 2017) ........................................................................22

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank,*
  566 U.S. 639 (2012) ..................................................................................................7

*Steadman v. Governor, U.S. Soldiers' & Airmen's Home,*
  918 F.2d 963 (D.C. Cir. 1990) ................................................................................18

*Telemaque v. United States,*
  82 Fed. Cl. 624 (2008) ............................................................................................14

*Trudeau v. FTC,*
  456 F.3d 178 (D.C. Cir. 2006) ................................................................................19

iii

* Authorities principally relied upon are marked with an asterisk

*United States v. Arthrex, Inc.,*
  594 U.S. 1 (2021) ........................................................................3

*Youngstown Sheet & Tube Co. v. Sawyer,*
  343 U.S. 579 (1952) ...................................................................13

*Zivotofsky ex rel. Zivotofsky v. Kerry,*
  576 U.S. 1 (2015) .......................................................................13

**Constitutional Provisions**

U.S. Const., art. I, § 8, cl. 1 ........................................................13

* U.S. Const., art. II, § 2, cl. 2 ...........................................2, 3, 13

**Statutes**

5 U.S.C. § 702 .............................................................................14

* Federal Vacancies Reform Act

  5 U.S.C. § 3345. ..........................................................................2

  5 U.S.C. § 3347 ...........................................................................5

  5 U.S.C. § 3348 ..............................................................5, 6, 7, 9

  5 U.S.C. § 3349c ...............................................................5, 6

* 22 U.S.C. § 290h-1, *et seq.*..................................2, 6, 7, 8, 10

28 U.S.C. § 1491 .........................................................................15

Further Consolidated Appropriations Act, 2024,
  Pub. L. No. 118-47, 138 Stat. 460 (2024) .......................10, 11

**Other Authorities**

*Authority of the President to Remove the Staff Director of the Civil
  Rights Commission and Appoint an Acting Staff Director,*
  25 Op. O.L.C. 103 (2001) ............................................................6

*Power of the President to Designate Acting Member of the Federal Home
  Loan Bank Board,*
  1 Op. O.L.C. 150 (1977) ..............................................................6

iv

* Authorities principally relied upon are marked with an asterisk

S. Rep. No. 105-250 (1998) ........................................................................4, 5

*Temporary Presidential Designation of Acting Board Members of the
  Inter-American Foundation and the United States African
  Development Foundation,*
  2025 WL 945804 (O.L.C. Mar. 14, 2025)...............................................6

v

* Authorities principally relied upon are marked with an asterisk

## INTRODUCTION

At the core of this case is a simple question: Do Defendants have the authority to skip all legally allowed procedures and appoint a head of a federal agency who then single-handedly reduces the agency to nothing? As our opening brief explained, the answer to that question is plainly no. As this Court has already indicated, neither the Constitution nor the Federal Vacancies Reform Act allow unilateral appointment—skipping advice and consent of the Senate—to the Board of USADF. The Court does not need to go any further than that unremarkable conclusion to decide this case: Because Pete Marocco was illegally appointed, his actions are void—full stop. That would be the case even if Marocco were faithfully implementing the congressionally dictated structure and functioning of USADF. But he is not. He is ignoring myriad constitutional and statutory requirements in an attempt to shutter a congressionally created and funded agency.

In response, Defendants ask this Court to ignore long-held, uncontroversial holdings of constitutional law; to rewrite statutes; and to reframe Plaintiffs' claims into something they are not. After presenting a novel (and baseless) reading of the President's appointment powers, Defendants insist that *implicit* presidential powers eclipse *explicit* limitations. And they spend much of their brief imploring this Court to adopt atextual, unreasonable limitations on its own authority to rule on the merits of their arguments. At bottom, Defendants ask this Court to agree that if the ends justify the means, the Constitution, statutes, and precedent should be given tortured readings. The Court should refuse that invitation and grant Plaintiffs' motion.

## ARGUMENT

### I. Plaintiffs have shown a likelihood of success on the merits.

#### A. The Federal Vacancies Reform Act prohibits Defendants' actions.

As we explained in our opening brief, the Appointments Clause forecloses any claim of Presidential power to unilaterally appoint principal officers. Pls.' Mem. 13, ECF No. 7-1. We also explained (and Defendants concede) that neither the USADF's organic statute, 22 U.S.C. § 290h-5(a)(1), nor any other federal statute grants the President the authority to appoint acting members to USADF's Board of Directors. Pls.' Mem. 14-15. And the Federal Vacancies Reform Act (FVRA), 5 U.S.C. § 3345 *et seq.*, precludes the appointment of an acting Board member. *See* Pls.' Mem. 15-18. Now, Defendants ignore the Appointments Clause, arguing instead that the FVRA doesn't apply, that Congress was silent as to appointment of USADF Board members, and that the President holds inherent power to appoint Marocco as an acting member of the Board. *See* Opp. 8-10. Defendants are wrong at each turn.

**1.** In arguing that the President had the power to appoint Marocco to a position as a principal officer, Defendants do not even address the plain text of the Appointments Clause, which describes only two methods for the appointment of officers, both of which require the participation of Congress. The first method allows the President to appoint principal officers—such as USADF Board members—only "with the advice and consent of the Senate." *Aviel v. Gor*, No. 25-5105, 2025 WL 1600446, at *2 (D.C. Cir. June 5, 2025) (opinion of Katsas, J.) (citing U.S. Const., art. II, § 2, cl. 2); *see also* 22 U.S.C. § 290h-5(a)(1) (specifying this method, and only this method, for appointment to the Board). Under the second method, "Congress may by

law vest" the appointment of inferior officers "as they think proper" in the President or in other bodies. U.S. Const., art. II, § 2, cl. 2.

Apart from the possibility of a recess appointment under Clause 3 of Section 2, the Constitution does not describe any additional vehicle for the appointment of federal officers. So Defendants turn to the Take Care Clause to invent a new method of appointment not provided for in the express language of the Appointments Clause. But one of the laws that the President must take care to be faithfully executed, after all, is the Appointments Clause, which, as just explained, does not allow unilateral appointment of principal officers. *See United States v. Arthrex, Inc.*, 594 U.S. 1, 6 (2021) (describing the relationship between the two clauses).

It is no surprise that every judge who has considered Defendants' Take Care Clause theory has rejected it. The government relied on this theory to try to justify the purported appointment of Marocco as the acting chair of the Board of USADF's sister organization, the Inter-American Foundation. After Judge AliKhan enjoined Marocco's purported appointment, *Aviel v. Gor*, No. 25-778 (LLA), 2025 WL 1009035, at *8 (D.D.C. Apr. 4, 2025), a panel of the D.C. Circuit denied the government's motion for a stay of that injunction; all three members of the D.C. Circuit agreed that the Take Care Clause would not permit the government to disregard the requirements of the Appointments Clause. "The Appointments Clause prohibits the appointment of principal officers without the advice and consent of the Senate. Such consent 'is a critical structural safeguard' against presidential overreach—a feature of our constitutional system, not a bug." *Aviel*, 2025 WL 1600446, at *2 (opinion of Katsas,

3

J.) (quoting *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 293 (2017)). "[T]he text and structure of the Constitution strongly suggest the President has no inherent authority to appoint officers of the United States, like IAF Board members, outside the structures of the Appointments Clause." *Id.* at *4 n.1 (opinion of Rao, J.).[1]

Instead, the Appointments Clause allows the President to appoint acting officers only to the extent that Congress grants him that power. Congress so understood this "divi[sion]" of the appointment power "between the Executive and Legislative Branches," *Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 884 (1991), when it enacted the FVRA in 1998. Apart from the methods that Congress specifies by law for such appointments, "the President lacks any inherent appointment authority," S. Rep. No. 105-250, at 5 (1998), and "in the absence of affirmative statutory authority to fill a vacancy, the office must remain vacant," *id.* The Supreme Court accordingly has recognized that, by enacting the FRVA and its predecessors, Congress "has given the President limited authority to appoint acting officials," *SW Gen., Inc.*, 580 U.S. at 294—that is, the statute is the affirmative (and circumscribed) source of authority for these appointments, rather than a restriction of a pre-existing Presidential power.

The FVRA specifies that it provides the "exclusive means for temporarily authorizing an acting official" to perform the duties of an office, unless another

---

[1] What's more, Defendants' argument would effectively render the Recess Appointments Clause to be surplusage. If the President can create vacancies, then rely on inherent authority to fill those vacancies for an indeterminate time with an "acting" principal no matter whether the Senate were in session or not, it is hard to see when the Recess Appointments Clause would ever come into play. *See Aviel*, 2025 WL 1009035, at *9.

statute "expressly" authorizes such an appointment, or the President exercises his recess appointment authority. 5 U.S.C. § 3347(a). *See also* S. Rep. No. 105-250, at 1 (describing the FVRA as the "exclusive process" to name acting officers). And the statute further specifies that, unless an acting officer is named in accordance with the terms of the FVRA itself, "the office shall remain vacant," "an action taken by any person [improperly claiming to be an acting officer] shall have no force or effect," and any such action "may not be ratified." 5 U.S.C. § 3348(b)(1), (d)(1), (d)(2). Because the FVRA is the exclusive method for the appointment of acting officials, and it does not provide for appointments of acting members of boards, the President enjoys no authority to appoint acting members to the Board of USADF. *See Aviel*, 2025 WL 1009035, at *8-*9 (holding the purported appointment of Marocco as acting chair of the IAF Board to be without force or effect).

**2.** Defendants contend that the FVRA does not apply at all here, given that 5 U.S.C. § 3349c clarifies that Congress's limited grant of appointment authority for acting officials does not extend to multi-member boards such as that of USADF. Opp. 10. Accordingly, they reason, in the face of "statutory silence," Opp. 9, Marocco could be appointed to this position without Congressional authorization. *See also Temporary Presidential Designation of Acting Board Members of the Inter-American Foundation and the United States African Development Foundation*, 2025 WL 945804

(O.L.C. Mar. 14, 2025) (OLC opinion, released during pendency of related litigation, similarly relying on "statutory silence").[2] That is doubly wrong.

Even if Defendants were correct that the FVRA were silent, they must identify an affirmative Congressional grant of authority for Marocco's appointment. *See Aviel*, 2025 WL 1600446, at *2 (opinion of Katsas, J.). They do not.

In all events, the FVRA is *not* silent. As we explained in our opening brief, 5 U.S.C. § 3348(d)(1) specifies that its terms cover "vacant office[s] to which . . . section 3349c appl[ies]," that is, vacancies on multi-member boards. *See* Pls.' Mem. 15. And as we further explained (at 17), Section 3348(d)(1) covers the treatment of persons invalidly claiming to serve as acting board members, while Section 3349c describes the treatment of Senate-confirmed board members. *See* 5 U.S.C. § 3349c(1). The two provisions can be (and thus must be) read in harmony with each other, *see Jones v. Hendrix*, 599 U.S. 465, 478 (2023), and even if there were any conflict between the

---

[2] Defendants also rely, Opp. 9-10, on two OLC opinions from 1977 and 2001, but neither supports their position. The first opinion predated the 1998 enactment of the FVRA. 1 Op. O.L.C. 150 (1977). That opinion also addressed when Congress leaves a gap for the Administration to fill by failing to enact a "holdover provision" for Senate-confirmed members to retain their seats on a board pending the confirmation of a successor. *Id.* Here, Congress did enact such a holdover provision, *see* 22 U.S.C. § 290h-5(a)(2), and Congress further underscored that the FVRA's limited statutory grant of authority for the appointment of acting officials is exclusive, leaving no gap for the Administration to fill. The second opinion is even further afield. It concerned the Presidential power of appointment of an inferior officer, where Congress had granted the President the authority to appoint a person permanently to that position but had not addressed his authority to make an appointment on an acting basis. 25 Op. O.L.C. 103 (2001). The members of the Board of USADF, however, are principal officers, and Congress has expressly withheld authority from the President to appoint acting members to that body.

two, the more specific language of section 3348 would take precedence, *see RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 646 (2012); *see also Aviel*, 2025 WL 1009035, at *8. Defendants fail entirely to respond to these statutory arguments and therefore have conceded them. *See Augustus v. McHugh*, 870 F. Supp. 2d 167, 172 (D.D.C. 2012).

Instead, Defendants puzzlingly argue that Section 3348 would be superfluous under our reading because "it would not be possible for someone to act 'in the performance of function or duty to which [Section 3349c] appl[ies],' 5 U.S.C. § 3348(d)(1), unless Section 3349c contemplated some form of temporary designation." Opp. 11 (brackets and misquotation of section 3348(d)(1) in original). If Plaintiffs understand the argument correctly, Defendants argue that under Section 3349c, the FVRA does not apply to USADF at all. Yet Section 3348's prohibition is no problem because Section 3349c somehow also "contemplate[s] some form of temporary designation" to USADF's Board. *See* Opp. 11. That makes no sense. Instead of holding that 3349c both doesn't apply *and* yet somehow also grants authority, the Court should give the statute its plain, sensible reading: "even if the President purports to appoint an officer to a Board-like entity in an acting capacity—something he cannot do under the FVRA in the first place—any actions by that officer are null and void." *Aviel*, 2025 WL 1009035, at *8.

Defendants also fail to even acknowledge the language of USADF's organic statute, which—far from being silent—describes Senate confirmation as the only vehicle for the appointment of members of USADF's Board, 22 U.S.C. § 290h-5(a)(1),

and further specifies that the consequence of a vacancy on the board is that the current member carries over until a successor is appointed in accordance with the terms of the statute, *id.* § 290h-5(a)(2). They have therefore conceded this point as well. *See Augustus*, 870 F. Supp. 2d at 172.

**3.** As the D.C. Circuit has explained, in provisions like the FVRA and USADF's organic statute, Congress has "addressed the problem of vacancies on various multimember agencies" by providing for the carryover of existing members until a successor is confirmed, but "Congress has chosen not to provide for acting [Board] members." *Noel Canning v. NLRB*, 705 F.3d 490, 511 (D.C. Cir. 2013), *aff'd,* 573 U.S. 513 (2014). The Circuit held that it was not free to disregard Congress's choice in this regard, because it could not "accept an interpretation of the Constitution completely divorced from its original meaning in order to resolve exigencies created by—and equally remediable by—the executive and legislative branches." *Id.* Defendants attempt to discount *Noel Canning* as mere dicta. Opp. 11-12. Not so. If the Executive were free to appoint acting members to the NLRB without regard to the boundaries of the limited power that Congress had granted in the FVRA, there would have been no need to consider the applicability of the Recess Appointments Clause. *Noel Canning*'s recognition that the relevant statutory provisions foreclose the appointment of acting board members, then, is binding on this Court.

Marocco, then, could not take a seat as an acting member of USADF's Board, as no statute authorized his appointment without Senate confirmation. For that reason alone, any actions he has taken in his purported role as a member of the Board must

be held to be without "force and effect," 5 U.S.C. § 3348(d)(1). *See SW Gen.*, 580 U.S. at 298 n.2; *Asylumworks v. Mayorkas*, 590 F. Supp. 3d 11, 26 (D.D.C. 2022).

In sum, no provision of law, whether in Article II or otherwise, permits Defendants to disregard the limits of the authority that Congress has granted for the appointment of acting officers. *See George v. Ishimaru*, 849 F. Supp. 68, 72 (D.D.C. 1994), *order vacated and appeal dismissed as moot*, No. 94-5111, 1994 WL 517746 (D.C. Cir. Aug. 25, 1994). Defendant protest that *Ishimaru* is not precedential authority, Opp. 12, but this misses the point. We cited *Ishimaru* for the factual proposition that "[n]o court has ever recognized that the President has such inherent authority" to appoint officers without Congressional authorization. 849 F. Supp. at 72. That proposition remains true today, especially after the D.C. Circuit's rejection of the government's stay application in *Aviel v. Gor*. This Court should not break new ground.

## B. Defendants cannot show any legal authority for their attempts to dismantle USADF.

This Court need proceed no further to find that Plaintiffs are likely to succeed on the merits. A finding that Marocco has not been validly appointed as the Acting Chair or the President of USADF would suffice to remedy Plaintiffs' injuries, as it follows from that finding that all of his actions since his purported appointment must be declared to be void *ab initio* under 5 U.S.C. § 3348(d). But Plaintiffs are entitled to relief for a second, independent reason: Marocco's efforts to dismantle USADF cannot be reconciled with the agency's duties under both its organic statute and under its

appropriations statute. For this reason, Marocco's actions violate the separation of powers, the Spending Clause, and are ultra vires.

**1.** Our opening brief detailed the ways in which Marocco has sought to cripple the agency since his purported appointment to the management of USADF. He has terminated the employment of almost all of USADF's staff. Only two employees remain on the agency's payroll and in active service. Ex. E, Declaration of Elisabeth Feleke ¶ 24-27, ECF No. 7-6. He has also terminated the contracts for all of USADF's country-program coordinators, along with all but three of the agency's partner grants, leaving the agency with no ability to operate in Africa. *Id.* ¶¶ 28-30. As a result, the remaining skeleton crew of USADF employees are unable to perform any of the functions that are necessary for it to administer its existing grants, to make payments on those grants, to evaluate applications for new grants, or to ensure its compliance with federal statutes and regulations. *Id.* ¶¶ 31-40; *see* Pls.' Mem. 8-11.

In short, Marocco has rendered USADF to be unable to fulfill the duties that Congress made clear it "shall carry out," 22 U.S.C. § 290h-2, including making grants to, loans, and loan guarantees to African public or private groups, *id.* § 290h-3(a). Marocco's actions have also rendered it impossible for USADF to comply with Congress's directive that it must devote $45 million toward grants to African recipients by the end of this fiscal year. Further Consolidated Appropriations Act, 2024, Pub. L. No. 118-47, Div. F, tit. III, 138 Stat. 460, 746 (2024). *See* Ex. E, Feleke Decl. ¶ 34, ECF No. 7-6. And Marocco has ignored Congress's instructions that he may not use appropriated funds to implement a reorganization plan for the agency

without first consulting with the Appropriations Committees. Pub. L. No. 118-47, Div. F, § 7063(a), (b), 138 Stat. at 843-44.

Likewise, Marocco's decision to dismantle USADF violates the separation of powers, as it is black-letter law that "Congress has plenary control over the … existence of executive offices," *Free Enterprise Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 500 (2010), and Congress has retained that plenary control by denying the Executive Branch the authority to reorganize federal agencies. *See* Pls.' Mem. 20. Marocco's decision violates the Spending Clause, as "settled, bedrock principles of constitutional law" require the Executive to expend the funds that Congress authorizes and appropriates. *In re Aiken Cnty.*, 725 F.3d 255, 259 (D.C. Cir. 2013) (Kavanaugh, J.). And Marocco's actions are ultra vires, because no statute authorizes him to reduce USADF to an empty husk.

Defendants respond to precisely none of this in their opposition brief. Although they characterize this case as involving "a dispute over statutory interpretation," Opp. 18, any such dispute is rather one-sided, given that Defendants have offered no reading of the African Development Foundation Act, the appropriations statute, or the Constitution that could justify Marocco's actions. They must therefore be treated as conceding the illegality of those actions. *See Augustus*, 870 F. Supp. 2d at 172.

**2.** Instead of engaging on the merits, Defendants proceed with a blizzard of irrelevancies and red herrings.

First, they assert that there is a distinction "between claims of constitutional violations and claims that an official has acted in excess of his statutory authority."

Opp. 18 (quoting *Dalton v. Specter*, 511 U.S. 462, 472 (1994)). But so what? *Dalton* acknowledges that an officer is not free to act "either 'unconstitutionally *or* beyond his statutory powers.'" *Id.* at 472 (quoting *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 691 n. 11 (1949) (*Dalton*'s emphasis)). *Dalton* merely held that Presidential actions that independently violated the Constitution would be reviewable, but that nonstatutory review would not be available for a claim that the President "exceeded his authority" under a statute that committed decision-making to his discretion. *See id.* at 476-77. But Marocco is not the President. And, more importantly, Marocco has not asserted that any statute has granted him the discretion or authority to dismantle USADF. So this case "involve[s] the conceded *absence* of *any* statutory authority," *Dalton*, 511 U.S. at 473 (emphasis in original), and nonstatutory review remains available over Marocco's ultra vires actions.

Next, Defendants argue that Executive Order No. 14,217 does not violate the African Development Foundation Act or the appropriations statute, because it merely directs the reduction of USADF's activities "consistent with applicable law." Opp. 19. Again, so what? Plaintiffs have not sought the invalidation of the executive order. Plaintiffs instead seek to invalidate Marocco's actions to dismantle USADF because they violate the separation of powers and the Spending Clause and are ultra vires— points, it bears repeating, that Defendants have never disputed. To the extent that the Executive Order requires compliance with statutory mandates, Defendants' argument merely shows that they are *also* violating that order.

Defendants then go on to allude to "the President's authority over foreign affairs." Opp. 19. But "many decisions affecting foreign relations—including decisions that may determine the course of our relations with recognized countries—require congressional action." *Zivotofsky ex rel. Zivotofsky v. Kerry,* 576 U.S. 1, 16 (2015) (citing the Appropriations Clause, U.S. Const., art. I, § 8, cl. 1, and the Appointments Clause, *id.*, art. II, § 2, cl. 2). And Defendants do not dispute the constitutionality of the African Development Foundation Act or the appropriations statute, both of which they are concededly violating. So this case falls comfortably into the category of reviewable executive action that touches on foreign affairs. *See Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 643 (1952) (Jackson, J., concurring) ("Congress alone controls the raising of revenues *and their appropriation* and may determine in what manner and by what means they shall be spent for military and naval procurement.") (emphasis added); *AIDS Vaccine Advoc. Coal. v. U.S. Dep't of State*, No. 25-cv-400, 2025 WL 752378, at *15-*16 (D.D.C. Mar. 10, 2025), *appeal docketed*, No. 25-5097 (D.C. Cir. Apr. 2, 2025).

## C. This Court has jurisdiction to hear Plaintiffs' claims.

Shorn of any legal authority for their actions, Defendants insist that this Court lacks jurisdiction to stop them. Specifically, Defendants argue that RDI's claims are *really* contract claims so they belong in the Court of Federal Claims. And Defendants argue that the employees' claims must be administratively exhausted under the Civil Service Reform Act. Defendants are wrong.

As an initial (and practical) matter, jurisdiction under the Tucker Act and the Civil Service Reform Act turn on the nature of the *claim*, not the identities of the

plaintiffs. RDI and the employees have entirely different relationships with Defendants. Yet they raise the exact same legal claims, requiring the exact same legal analysis, and seek the exact same relief—an order that Defendants lack authority for their actions (the same relief sought by Ward Brehm). The claims do not involve disagreements that a grantee might have with a grantor in the application of specific grant terms. Nor do they involve an employee and employer having it out over working conditions. So there is no reason to scuttle the claims to forums that were created to adjudicate those kinds of controversies. And it would be impractical to have this Court, the Court of Federal Claims, *and* the MSPB all decide the exact same issue at the same time.

In all events, both of Defendants' jurisdictional arguments fail on their own terms.

### i.   RDI does not bring contract claims for money damages.

**1.** RDI brings ultra vires, constitutional, and statutory claims to challenge the unlawful appointment of Marocco to the USADF Board and Defendants' ensuing attempts to dismantle USADF. RDI seeks declaratory, injunctive, and administrative relief, but does not seek any money damages. *See* Compl. at 26-27. This Court has jurisdiction to consider all RDI's ultra vires and constitutional claims, *see AIDS Vaccine Advoc. Coal. v. U.S. Dep't of State*, No. 25-cv-400, 2025 WL 752378, at *7 n.6 (D.D.C. Mar. 10, 2025), but the Court of Federal Claims does not, *see, e.g.*, *Telemaque v. United States*, 82 Fed. Cl. 624, 626 (2008). And because Plaintiffs are "seeking relief other than money damages," this Court also has jurisdiction over RDI's APA claim. 5 U.S.C. § 702.

14

**2.** Defendants insist, however, that this Court does not have jurisdiction because RDI's claims fall under the Tucker Act. The Tucker Act vests the Court of Federal Claims with jurisdiction over claims addressing more than $10,000 in money damages arising from "express or implied contract[s] with the United States" 28 U.S.C. § 1491(a)(1). The Tucker Act applies if the issue in a case is "at its essence" a contract claim. *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967 (D.C. Cir. 1982). Whether a claim "at its essence" is contractual turns on (1) "the source of the rights" underlying the claims and (2) "the type of relief sought (or appropriate)." *Id.* at 968. As already explained, that RDI brings the exact same claims as the employees proves that RDI's claims are not "at [their] essence" contract claims. *See id.* Both prongs of *Megapulse* confirm that conclusion.

**A.** Whether the source of the rights at issue is contractual turns on, among other things, what legal authority the courts must interpret to decide the case, *see, e.g.*, *Megapulse*, 672 F.2d at 969, whether the plaintiff seeks to enforce contract terms, *see Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1108-09 (D.C. Cir. 2022), and whether the plaintiff's legal rights or the government's authority arise from statute or from contract terms, *id.*[3]

---

[3] The analysis does not turn on whether a contract is the source of the *relationship* between the parties (or the ground for Article III standing). *See Crowley*, 38 F.4th at 1110. If the conclusion were otherwise, *Megapulse* would have come out the other way. After all, the source of the relationship between the parties there was a contract. *See Megapulse*, 672 F.2d at 961. Despite explicit provisions in the contract giving the Coast Guard access to use and disclose "all or any part" of the data provided by the plaintiff company, the company argued that the government's treatment of the data violated the Trade Secrets Act. *Id.* The court looked beyond the contract terms and

Defendants fail to argue that a contractual agreement is the source of RDI's rights. But each consideration cuts decisively in favor of RDI. First, to resolve RDI's claims, the Court does not need to apply contract law to contract terms—it must decide whether the Appointments Clause or the FVRA permit Marocco to act on behalf of USADF at all, or (if he does have that authority) whether the Constitution, the African Development Foundation Act, and the appropriations statute permit him to render the agency completely inoperative. Next, RDI does not ask this Court to enforce any terms of its grant—it doesn't reference or rely on its grant terms at all. And "it would be quite extraordinary to consider Plaintiffs' claims to sound in breach of contract when they do not at all depend on whether the terms of particular awards were breached." *AIDS Vaccine Advoc. Coal. v. U.S. Dep't of State*, No. 25-cv-400, 2025 WL 752378, at *9 (D.D.C. Mar. 10, 2025). Similarly, Defendants' alleged legal authority does not arise from the terms of any agreement. If it did, presumably Defendants would have pointed to a single term of RDI's grant. They have not.

**B.** The Court could stop its Tucker Act analysis there. But if there were any doubt, the relief that RDI seeks settles it. The Tucker Act applies only if a plaintiff seeks money damages—specific, calculated sums "designed to compensate for completed labors." *Maine Cmty. Health Options v. United States*, 590 U.S. 296, 327 (2020). As explained in our opening brief—and entirely ignored by Defendants—the primary relief RDI seeks is an order that Marocco's actions are void *ab initio* under the FVRA.

---

held that the government had overstepped its statutory bounds in unrestrictedly releasing the data. *Id.* at 969.

*See* Pls.' Mem. 27-28. In other words, RDI asks simply for an order directing that Marocco may not act on USADF's behalf; the agency's true management would remain free to take any lawful actions that they deemed to be appropriate with respect to RDI's grant. RDI's other claims likewise seek equitable, injunctive relief that the Court of Federal Claims has no jurisdiction to decide because the Court of Federal Claims can decide constitutional or statutory claims *only* if they are money-mandating. *Maine Cmty. Health*, 590 U.S. at 322-23.

Instead of addressing, or even acknowledging this well-settled law, Defendants try to recast RDI's claims as something they are not. *See* Opp. 15 (stating, without support, that RDI's "requested relief is . . . reopening the spigot of grant disbursements"); *id.* at 16 ("RDI seeks to ensure the government's continued compliance with the terms of their grant agreement . . . ."). But again, RDI does not seek grant funds, nor does it seek compliance with (or even mention) the terms of its grants. Instead, RDI asks this Court to hold what it has already indicated: "The FVRA does not, however, permit" the appointment of Marocco to USADF's Board and to conclude otherwise would "ignore[] Congress's amendments to the statutes authorizing the President to fill vacancies and longstanding Supreme Court precedent." *Brehm v. Marocco*, No. 25-cv-660, Order at 8, ECF No. 15 (Mar. 11, 2025).

### ii.  The employees do not bring claims under the CSRA.

Defendants argue in passing that because two plaintiffs—Olson and Chi—are employees, this Court lacks jurisdiction until Olson and Chi exhaust administrative remedies under the Civil Service Reform Act. *See* Opp. 16-17. Defendants argue that "federal law requires channeling of all claims related to federal employment." *Id.* at

17

17. But Defendants do not address, or even cite, the longstanding D.C. Circuit caselaw that flatly disproves their categorical argument.

Whether a government officer was duly appointed "obviously [is] unsuited to resolution in administrative hearing procedures and, therefore, access to the courts is essential to the decision of such questions." *Andrade v. Lauer*, 729 F.2d 1475, 1491 (D.C. Cir. 1984) (quoting *Califano v. Sanders,* 430 U.S. 99, 109 (1977)). Olson and Chi do not challenge the government's compliance with principles of federal employment law; instead, their FVRA claim asserts that Marocco is the wrong person to decide their employment status, so their claim is "about subjection to an illegitimate proceeding, led by an illegitimate decisionmaker." *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 191 (2023). A baseball player's disagreement with an umpire about a strike or a ball is one thing; his objection that a fan who runs onto the field has no authority to call off the game is another thing entirely.

More broadly, when a "constitutional claim raises issues totally unrelated to the CSRA procedures," exhaustion is not required and a plaintiff can "come directly to district court." *Steadman v. Governor, U.S. Soldiers' & Airmen's Home*, 918 F.2d 963, 967 (D.C. Cir. 1990). Constitutional claims brought by employees can require exhaustion only if administrative review can be "fully effective in remedying the constitutional violation premised on the same facts" as the "violation of federal personnel regulations." *Andrade*, 729 F.2d at 1493. Olson and Chi do not allege *any* violation of federal personnel regulations—so there is no CSRA remedy at issue at

all, never mind one that could be "fully effective in remedying the constitutional violation," *id.*

What's more, the CSRA's jurisdictional exclusivity is "premised on the existence of a fair and efficient administrative process" to resolve plaintiffs' claims. *Id.* Again, that the employees bring the same legal claims and seek the same legal remedies as RDI (a nonemployee grantee), highlights that it would be wildly inefficient to require exhaustion before a specialized body with expertise in federal-employment claims. *See also Nat'l Ass'n of Immigr. Judges v. Owen*, No. 23-2235, 2025 WL 1560373, at *1 (4th Cir. June 3, 2025) (remanding to district court "to consider whether the text, structure, and purpose of the Civil Service Reform Act has been so undermined that the jurisdiction stripping scheme no longer controls").

### D. Plaintiffs raise viable APA claims.

Finally, Defendants raise a series of arguments against the availability of an action under the Administrative Procedure Act. Opp. 22-26. Again, because the Court can decide this case on the basis of the FVRA alone, it does not need to address the APA claims that Defendants are acting in excess of statutory and constitutional authority. To the extent the Court opts to address the APA, Defendants argue that Plaintiffs' claims are not viable under the APA at all. If that were correct, it would not help Defendants because this Court could still decide Plaintiffs' ultra vires claims. *See Trudeau v. FTC*, 456 F.3d 178, 187 (D.C. Cir. 2006). And as explained above (at 9-11), Defendants do not even attempt to dispute those claims, so have forfeited any argument that Marocco's dismantling of the agency is in keeping with the

constitutional or statutory limits of his (purported) authority. In all events, Defendants' APA arguments are wrong.

First, Defendants argue that Plaintiffs do not raise a discrete final agency action to be reviewed under the APA. *See* Opp. 22-25. But Plaintiffs do not challenge "an on-going program or policy" or "seek wholesale improvement" of USADF. *See* Opp. 22 (citations omitted). Plaintiffs challenge Defendants' unilateral decision to shut down an agency created, structured, and funded by Congress. Beyond misrepresenting Plaintiffs' arguments, Defendants ignore Plaintiffs' evidence showing that USADF has effectively been shut down. *See, e.g.*, Pls.' Mem. 8-12. Defendants only response is to point to (questionable) evidence they submitted in *Brehm* two months ago. *See* Opp. 5.

Next, Defendants argue that APA review is improper because Defendants have total discretion over employment decisions and Plaintiffs are merely second-guessing an agency's "broad discretion to fashion internal procedures for formulating policies and implementing a statute." Opp. 26-27. Wrong again. Plaintiffs do not challenge USADF's "independent staffing decisions." Opp. 26. The crux of Plaintiffs' claim—a point, again, that Defendants have never disputed—is that Defendants aren't implementing the relevant statutes at all—quite the opposite. And there certainly are judicially manageable standards for the Court to conclude that Defendants have acted beyond their authority by eliminating an agency that Congress created and by impounding funds that Congress directed be spent.

Finally, Defendants insist that APA review is unavailable because Plaintiffs have other adequate remedies. Opp. 27-28. But as just explained (at 13-19), neither the Tucker Act nor the CSRA provide adequate alternative remedies. Neither the Court of Federal Claims nor the Merit Systems Protection Board have the authority to declare what is obviously the case following the stay panel's ruling in *Aviel v. Gor*: Marocco has no authority to act on behalf of USADF.

## II. Plaintiffs are suffering irreparable harm and the balance of equities and public interest favors an injunction.

**A.** Plaintiffs' opening brief explained why they are experiencing harm that cannot be remedied at final judgment. *See* Pls.' Mem. 23-25. In response, Defendants invent new legal requirements from whole cloth and ignore Plaintiffs arguments and evidence.

RDI showed that absent preliminary relief, not only will it likely be forced to shut down entirely, it will also be legally liable for redundancy payments that exceed its reserves. *Id.* at 23-24. Defendants acknowledge (at 31) that the threat of a forced shut down is irreparable harm. That should end it. But Defendants then concoct a new gloss—that a Plaintiff must prove that not only will it close, but that at some unknown point in the future "it would not be able to reopen." Opp. 31. Defendants cite no authority for that proposition. And we are aware of none.

Compounding their errors, Defendants argue that because Olson and Chi are employees, they can receive money damages in the form of backpay at final judgment so are not irreparably harmed. Opp. 29-30. Defendants then argue that Olson and Chi complain about harm to third parties, which is insufficient to show irreparable

harm. *Id.* at 30. Both arguments ignore the employees' arguments and the effects of waiting until final judgment for relief. As our opening brief explained (at 24), Olson and Chi will not be able to receive backpay because relief under the FVRA is not money damages, it is an order that Marocco's actions are void *ab initio*. That means that Olson and Chi were never terminated. But without preliminary relief, Marocco will continue to cause grantees like RDI to shut down entirely (among other irreparable actions). So if they have to wait until final judgment, Olson and Chi will return to an organization that effectively no longer exists. *See* Pls.' Mem. 24. Finally, Defendants do not acknowledge, so forfeit, Olson and Chi's arguments about the reputational harms they are suffering.

**B.** Defendants ignore Plaintiffs' showing (at 25-26) that the balance of the equities and public interest tip overwhelmingly in favor of preliminary relief, not least because communities throughout Africa will miss the narrow window of the crop growing season without the fulfillment of USADF's commitments to them. Instead, Defendants rehash their arguments on the merits, arguing that it is in the public interest for the President to ignore the FVRA, among other laws, to have someone who "will effectively serve him." *See* Opp. 32. But because there is "no public interest in the perpetuation of unlawful agency action," *Open Cmtys. All. v. Carson*, 286 F. Supp. 3d 148, 179 (D.D.C. 2017), it is not in the public interest for Defendants to run roughshod over constitutional and statutory requirements because those requirements are a burden.

Finally, contrary to Defendants' characterization, Opp. 6, 33, Plaintiffs do not seek a mandatory injunction that would alter the status quo. "The status quo is the last *uncontested* status which preceded the pending controversy." *Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 733 (D.C. Cir. 2022) (internal quotation omitted) (emphasis in original). "Courts also have awarded preliminary injunction when it is necessary to compel defendant to correct injury already inflicted by defining the status quo as 'the last peaceable uncontested status' existing between the parties before the dispute developed." *Id.* at 733-34 (internal quotation omitted). Plaintiffs simply seek relief that would confirm the state of affairs before this dispute developed.

## CONCLUSION

For these reasons, the Court should grant Plaintiffs preliminary injunctive relief until the Court can further consider the merits.


June 9, 2025                                    Respectfully submitted,

                                                  */s/ Bradley Girard*
                                                Bradley Girard (DC Bar No. 1033743)
                                                Joel McElvain (DC Bar No. 448431)
                                                Robin F. Thurston (DC Bar No. 1531399)
                                                Skye Perryman (DC Bar No. 984573)
                                                Democracy Forward Foundation
                                                P.O. Box 34553
                                                Washington, DC 20043
                                                (202) 448-9090
                                                jmcelvain@democracyforward.org
                                                bgirard@democracyforward.org
                                                rthurston@democracyforward.org
                                                sperryman@democracyforward.org

                                                *Counsel for Plaintiffs*

23