IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Rural Development Innovations Limited, *et al.*,<br><br>    *Plaintiffs*,<br><br>v.<br><br>Pete Marocco, *et al.*,<br><br>    *Defendants*. | Civil Action No. 25-1631 (RJL) |

**MEMORANDUM OPINION**

July 1st, 2025 [Dkt. #7]

This case is the second challenge to President Trump's efforts to reduce the functions of the United States African Development Foundation ("USADF"), a small federal agency that invests directly into African enterprises. Plaintiffs Rural Development Innovations Limited ("RDI")—a grant recipient in Zambia—and Paul Olson ("Olson") and Solomon Chi ("Chi")—two former employees of USADF—filed this suit with an accompanying motion for a preliminary injunction against Pete Marocco ("Marocco"), the U.S. Department of Government Efficiency Service ("DOGE"), Sergio Gor, Amy Gleason, Stephen Ehikian, Scott Bessent, Douglas Burgum, and President Donald J. Trump (collectively, "defendants") for alleged violations to the Federal Vacancies Reform Act, the African Development Foundation Act, various constitutional provisions, and the Administrative Procedure Act. All these violations flow from the President's appointment of Marocco as an acting member of USADF's Board of Directors. For the reasons stated

1

below, the Court **GRANTS IN PART AND DENIES IN PART** the motion for a preliminary injunction.

## BACKGROUND

### I. Statutory and Factual Background

USADF is a federal agency established by Congress to support and invest in African-owned and African-led enterprises with the goal of "enabl[ing] the people of African countries to develop their potential, fulfill their aspirations, and enjoy better, more productive lives[.]" *See* 22 U.S.C. § 290h-2(a). The agency is tasked with making "grants, loans, and loan guarantees to any African private or public group (including public international organizations), association, or other entity engaged in peaceful activities for" carrying out its purposes. *Id.* § 290h-3(a)(1).

The statute vests the management of USADF in a Board of Directors ("Board"). *See id.* § 290h-5(a)(1). The Board is "composed of seven members appointed by the President [of the United States], by and with the advice and consent of the Senate." *Id.* The President may select a chairperson and vice chairperson among the board members. *Id.* The Board, in turn, manages the agency in part through its appointment of a president. *Id.* § 290h-5(d). The president functions "on such terms as the Board may determine." *Id.* By the Board's delegation, the president has the "responsibility for directing the day to day activities of the Foundation." 22 C.F.R. § 1501.3(b).

On February 19, 2025, President Trump signed Executive Order 14,217 ("EO 14,217"), entitled "Commencing the Reduction of the Federal Bureaucracy." *See* 90 Fed. Reg. 10577 (Feb. 19, 2025). The purpose of EO 14,217 is to "dramatically reduce the size

of the Federal Government[.]" *Id.* § 1. It lists four federal agencies—USADF included—that would "be eliminated to the maximum extent consistent with applicable law" by "reduc[ing] the performance of [its] statutory functions and associated personnel to the minimum presence and function required by law[.]" *Id.* § 2.

A few days after President Trump signed EO 14,217, he appointed Marocco—one of the Trump Administration's utility players[1]—as the acting chairperson of USADF's Board. Compl. [Dkt. #1] ¶¶ 4, 51. Marocco subsequently appointed himself as the president of USADF and commenced the reduction of the agency. *Id.* ¶¶ 4–5, 52. Specifically, Marocco terminated most of USADF's grants, contracts, and employees. *Id.* ¶¶ 5, 59–64. That included RDI's funding it received through a cooperative agreement, and Olson and Chi's employment. *Id.* ¶¶ 7–8; Pls.' Mot., Ex. A, Decl. of Victor Makasa ("Makasa Decl.") [Dkt. #7-2] ¶¶ 2, 5. To date, two employees are still employed, and three grants remain active at USADF. Compl. ¶¶ 61, 63.

## II. Procedural History

In a related case, Ward Brehm ("Brehm") challenged President Trump's appointment of Marocco and his actions at USADF. *See Brehm v. Marocco*, No. 25-CV-660 (D.D.C. Mar. 6, 2025) [Dkt. #1]. The Court denied Brehm's motion for summary judgment, in part because Brehm did not have standing to challenge Marocco's appointment. *See id.*, 2025 WL 1640193, at *1, 5–6 (D.D.C. June 10, 2025).

---

[1] *See, e.g., Aviel v. Gor*, No. 25-5105, 2025 WL 1600446, at *1 (D.C. Cir. June 5, 2025) (Katsas, J., concurring) (Marocco appointed as an acting Board member at the Inter-American Foundation); *Aids Vaccine Advoc. Coal. v. U.S. Dep't of State*, 770 F. Supp. 3d 121, 141 (D.D.C. 2025) (Marocco installed as United States Agency for International Development Deputy Administrator).

While summary judgment motions were pending in *Brehm*, plaintiffs filed the present lawsuit. The Complaint alleges that the President's appointment of Marocco as an acting member of USADF's Board is *ultra vires* under the Federal Vacancies Reform Act ("FVRA") and the African Development Foundation Act. Compl. ¶¶ 75–85. It also alleges that (i) the President's appointment of Marocco; (ii) defendants' termination of USADF's contracts, grants, and employees; and (iii) defendants' actions that "render it impossible for USADF to perform its statutory functions" violate the Appointments Clause, "the principle of separation of powers, the Constitution's vesting of the spending power and the power to legislate in Congress, and the Take Care Clause." *Id.* ¶¶ 86–93. Finally, the Complaint alleges that defendants' actions at USADF after Marocco's appointment violate the Administrative Procedure Act. *Id.* ¶¶ 94–98. Plaintiffs seek declaratory relief—or, in the alternative, a writ of mandamus—injunctive relief, attorneys' fees and expenses, and "such other relief as the Court deems proper." *Id.* ¶¶ 99–102; *id.* at 26–27 (Prayer for Relief).

With the Complaint, plaintiffs move for a preliminary injunction ("PI"). *See* Pls.' Mot. for Preliminary Injunction ("Pls.' Mot.") [Dkt. #7]; Pls.' Mem. in Supp. of Pls.' Mot. ("Pls.' Br.") [Dkt. #7-1]; Reply in Supp. of Pls.' Mot. ("Pls.' Reply") [Dkt. #13]. Defendants oppose. *See* Defs.' Opp. to Pls.' Mot. ("Defs.' Opp.") [Dkt. #12]. The Court held a hearing on plaintiffs' motion on June 18, 2025. The motion is ripe for review.

## STANDARD

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. NRDC*, 555 U.S.

7, 22 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 727 (D.C. Cir. 2022) (quoting *Winter*, 555 U.S. at 20). The last two factors merge when the Government is the opposing party. *Shawnee Tribe v. Mnuchin*, 984 F.3d 94, 102 (D.C. Cir. 2021).

## ANALYSIS

### I. Likelihood of Success on the Merits

Plaintiffs must make a clear showing not only of a likelihood of success on the merits but "a *substantial* likelihood of success on the merits." *Elec. Privacy Info. Ctr. v. Dep't of Corrections*, 928 F.3d 95, 104 (D.C. Cir. 2019) (emphasis added) (quoting *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015)). That includes plaintiffs' ability to successfully establish this Court's jurisdiction. *See id.* ("[T]he 'merits' on which plaintiff must show a likelihood of success encompass not only substantive theories but also establishment of jurisdiction." (alteration in original) (quoting *Obama v. Klayman*, 800 F.3d 559, 565 (D.C. Cir. 2015) (Williams, J., concurring)). Here, plaintiffs have shown that the Court has jurisdiction over their claims and that the President's appointment of Marocco as an acting USADF board member is likely unlawful.[2]

---

[2] Plaintiffs move for a preliminary injunction on the additional grounds that "[d]efendants have violated the separation of powers, the Spending Clause, and have acted ultra vires by violating USADF's organic statute and appropriations statute." Pls.' Br. at 19. Since the Court finds that plaintiffs have shown a likelihood of success in showing that Marocco does not have legal authority to serve at USADF, I do not reach these claims.

A.   **Jurisdiction**

"Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider." *Bowles v. Russell*, 551 U.S. 205, 212 (2007). "Congress may preclude district court jurisdiction by establishing an alternative statutory scheme for administrative and judicial review." *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump* ("*AFGE*"), 929 F.3d 748, 754 (D.C. Cir. 2019). Defendants argue that the Court lacks jurisdiction to hear this case because the "heart of RDI's action [ ] is to enforce the government's monetary obligations pursuant to [the] agreement," and Olson and Chi are "challeng[ing] the propriety of the reduction in force generally." Defs.' Opp. at 15–16. According to defendants, the Tucker Act and Civil Service Reform Act ("CSRA") strip this Court of jurisdiction. *Id.* at 13–17. These arguments are futile.

1.   The Tucker Act

Under the Tucker Act, the Court of Federal Claims has exclusive jurisdiction over certain contract and monetary claims against the Government. *See* 28 U.S.C. § 1491. A claim falls under the Tucker Act if it "is *at its essence* a contract claim." *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1106 (D.C. Cir. 2022) (quoting *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967 (D.C. Cir. 1982)). But our Circuit has determined that "whether a claim is 'at its essence' contractual for the Tucker Act 'depends both on the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought (or appropriate).'" *Id.* (quoting *Megapulse*, 672 F.2d at 968).

RDI's claims here are not at their "essence contractual." The Court recognizes that RDI's claims implicate its cooperative agreement with USADF; indeed, RDI would not

6

have standing to advance its claims if Marocco had not terminated its funding. Our Circuit has cautioned, however, that the Tucker Act should not be interpreted "so broad[ly] as to deny a court jurisdiction to consider a claim that is validly based on grounds other than a contractual relationship with the government." *Megapulse*, 672 F.2d at 968. Such is the case here. RDI is not seeking to vindicate its contractual right to grant funds or remediate a breach of the cooperative agreement's terms. Rather, RDI challenges the President's appointment of Marocco, and its claims turn exclusively on the Court's examination of federal statutes and the Constitution. *See* Compl. ¶¶ 75–98. That a grantee (RDI) and former employees (Olson and Chi) bring the same claims underscores that RDI's cooperative agreement is not the source of its rights. *See id.*

The type of relief RDI seeks also does not confer exclusive jurisdiction to the Court of Federal Claims. RDI does not seek money damages, nor request the Court to order specific performance under the cooperative agreement. *Cf. Dep't of Educ. v. California*, 145 S.Ct. 966, 966–68 (U.S. Apr. 4, 2025) (per curiam) (holding that the Department of Education was likely to succeed in showing that the district court lacked jurisdiction under the Tucker Act to order payment of the money under the APA because the suit sought "to enforce a contractual obligation to pay money"). Instead, RDI requests declaratory and injunctive relief to remediate Marocco's allegedly unlawful appointment. *See* Compl. at 26–27 (Prayer for Relief). That places RDI's claims outside our Circuit's current debate about whether district courts may reinstate grants. *See generally Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817 (D.C. Cir. May 3, 2025) (per curiam), *vacated*, 2025 WL 1521355 (May 28, 2025); *Am. Libr. Ass'n v. Sonderling*, No. 25-1050, 2025 WL 1615771,

at *9–11 (D.D.C. June 6, 2025) (collecting cases).

Still, defendants argue that RDI's requested relief essentially seeks to "reopen[ ] the spigot of grant disbursements." Defs.' Opp. at 15. Not so. Without a doubt, this lawsuit is chiefly concerned with Marocco's appointment, and RDI seeks to remediate Marocco's allegedly unlawful appointment. *See* Compl. at 26–27 (Prayer for Relief). While RDI's grant could be reinstated by the Court voiding Marocco's actions, "[t]he fact that a judicial remedy may require one party to pay money to another is not sufficient reason to characterize the relief as 'money damages.'" *Bowen v. Massachusetts*, 487 U.S. 879, 893 (1988); *see Crowley*, 38 F.4th at 1108 ("Exclusive jurisdiction in Claims Court under the Tucker Act does not lie 'merely because . . . success on the merits may obligate the United States to pay the complainant.'" (quoting *Kidwell v. Dep't of Army*, 56 F.3d 279, 284 (D.C. Cir. 1995)). The Court of Federal Claims therefore does not have exclusive jurisdiction.

### 2.  The Civil Service Reform Act

Next up, the CSRA. To determine whether the CSRA strips this Court's jurisdiction, the Court employs the framework set forth in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994). Under *Thunder Basin*, "courts determine that Congress intended that a litigant proceed exclusively through a statutory scheme of administrative and judicial review when (i) such intent is 'fairly discernible in the statutory scheme,' and (ii) the litigant's claims are 'of the type Congress intended to be reviewed within [the] statutory structure.'" *Jarkesy v. SEC*, 803 F.3d 9, 15 (D.C. Cir. 2015) (quoting *Thunder Basin*, 510 U.S. at 207, 212).

The Court has jurisdiction over Olson and Chi's claims. While the CSRA

"established a comprehensive system for reviewing personnel action taken against federal employees," Olson and Chi's claims fall outside the statute. *See Elgin v. Dep't of Treasury*, 567 U.S. 1, 5 (2012) (quoting *United States v. Fausto*, 484 U.S. 439, 455 (1988)); *Am. Fed'n of Gov't Emps. v. Sec'y of Air Force*, 716 F.3d 633, 636 (D.C. Cir. 2013) (same). Claims fall outside the scope of a special statutory scheme when: "(1) a finding of preclusion might foreclose all meaningful judicial review; (2) the claim[s] [are] wholly collateral to the statutory review provisions; and (3) the claims are beyond the expertise of the agency." *AFGE*, 929 F.3d at 755. Olson and Chi would not be deprived of "meaningful judicial review" if their claims were heard by the applicable administrative body, as Olson and Chi "can (eventually) obtain review of their . . . claims through an appeal from an adverse agency action to a court of appeals." *See Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 190–91 (2023); *Elgin*, 567 U.S. at 21 (holding that Congress provided "meaningful review" in authorizing the Federal Circuit "to consider and decide petitioners' constitutional claims"). Still, the claims are collateral: Olson and Chi are challenging Marocco's authority generally, rather than his decision to terminate their employment. *See Axon*, 598 U.S. at 192–93.

Finally, Olson and Chi's claims are "outside the [applicable administrative body's] expertise." *Thunder Basin*, 510 U.S. at 212. The claims do not "involve 'threshold' and other 'questions unique to the employment context' that 'fall[ ] squarely within the MSPB's expertise,'" nor challenge the "substantive decision" to fire Olson and Chi. *See Axon*, 598 U.S. at 187–89 (quoting *Elgin*, 567 U.S. at 22–23). Instead, they involve whether a principal officer's appointment violates Article II and other statutory and constitutional

9

provisions, which are detached from "considerations of agency policy." *Id.* at 194 (quoting *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 491 (2010)).

These considerations indicate that Congress did not intend for Olson and Chi's claims to proceed exclusively through a special statutory scheme. *See Axon*, 598 U.S. at 186 (where the factors "point in different directions," "[t]he ultimate question is how best to understand what Congress has done – whether the statutory review scheme, though exclusive where it applies, reaches the claim in question"). Plaintiffs' claims are not "of the type" that the CSRA reaches. *See Thunder Basin*, 510 U.S. at 212. Again, that is apparent from the fact that Olson and Chi bring the same claims as RDI. The Court therefore has jurisdiction.

### B. Merits

Plaintiffs argue that they are likely to prevail on their challenge to the President's appointment of Marocco as an acting Board member. Pls.' Br. at 13–19. I agree.

The Constitution likely does not vest the President with the authority to appoint Marocco as an acting Board member at USADF. The USADF Board reports only to the President, so its members are principal officers. *See, e.g., Edmond v. United States*, 520 U.S. 651, 662–63 (1997). The President did not, however, appoint Marocco with the advice and consent of the Senate, as required by the Appointments Clause, U.S. Const. Art. II, § 2, cl. 2, nor did the President make a recess appointment under Article II, U.S. Const., art. II, § 2. Nevertheless, defendants argue the President has inherent Article II authority to appoint acting principal officers to ensure that he may faithfully execute federal law under the Take Care Clause, U.S. Const. Art II, § 3. Defs.' Opp. at 7–9. Judges in our

Circuit have cast serious doubt on this argument. *See Aviel v. Gor*, No. 25-5105, 2025 WL 1600446, at *2 (D.C. Cir. June 5, 2025) (Katsas, J., concurring) (Government was unlikely to succeed in its argument that the President had authority under the Take Care Clause to appoint Marocco as an acting Board member at the Inter-American Foundation); *id.* at *4 n.1 (Rao, J., dissenting) (same). As a judge in our Circuit explained, "the text and structure of the Constitution strongly suggest the President has no inherent authority to appoint officers of the United States . . . outside the structures of the Appointments Clause[.]" *Id.* at *4 n.1 (Rao, J., dissenting). The President therefore likely did not have authority under the Constitution to appoint Marocco.

It is also likely that Congress has not authorized the President to appoint acting USADF Board members. Under the Federal Vacancies Reform Act, the President may "appoint acting officials to temporarily perform the functions of a vacant [principal] office without first obtaining Senate approval." *NLRB v. SW Gen. Inc.*, 580 U.S. 288, 294 (2017). The FVRA is ordinarily "the exclusive means for temporarily authorizing an acting official to perform the functions and duties of any office of an Executive agency" for which Senate confirmation is required, 5 U.S.C. § 3347(a), unless another "statutory provision expressly" authorizes the President or another official to make such a designation, *id.* § 3347(a)(1). The African Development Foundation Act does not provide such authorization, as it requires appointment of its Board members with advice and consent of the Senate, 22 U.S.C. § 290h-5(a)(1), and the parties agree that FVRA does not apply to USADF, *see* Pls.' Br. at 21; Defs.' Opp. at 10. Therefore, Congress has likely not affirmatively authorized Marocco's appointment at USADF.

In sum, it unlikely that the President has the authority to appoint Marocco as an acting Board member as USADF. While defendants argue that the President has inherent Article II power to appoint acting principal officers, there is little hope for defendants that this argument will win the day. The Court therefore finds that plaintiffs are likely to succeed on the merits of their challenge to the legality of Marocco's appointment.[3]

## II. Irreparable Harm

Our Circuit has set a "high standard" for irreparable harm. *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). It requires plaintiffs to show that their injuries are "both certain and great, actual and not theoretical, beyond remediation, and of such *imminence* that there is a clear and present need for equitable relief." *Mexichem Specialty Resins v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015). It must also "be beyond remediation," meaning that "[t]he possibility [of] adequate compensatory or other corrective relief . . . at a later date . . . weighs heavily against a claim of irreparable harm." *England*, 454 F.3d at 297–98 (quoting *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)).

RDI has shown irreparable injury. Traditionally, "economic loss does not, in and

---

[3] Defendants argue that plaintiffs seek a mandatory injunction to change the status quo, which requires plaintiffs meet an additional hurdle of showing that the "facts and law *clearly favor*" them. *See Columbia Hosp. for Women Found., Inc. v. Bank of Tokyo-Mitsubishi Ltd.*, 15 F. Supp. 2d 1, 4 (D.D.C. 1997); Defs.' Opp. at 33. Our Circuit has advised that the status quo is "the last *uncontested* status which preceded the pending controversy." *Huisha-Huisha*, 27 F.4th at 733 (quoting *District 50, United Mine Workers of Am. v. Int'l Union, United Mine Workers of Am.*, 412 F.2d 165, 168 (D.C. Cir. 1969)). Here, Marocco's appointment, of course, happened over four months ago, and he took immediate action to commence the reduction of USADF. But the last uncontested status at USADF is right before Marocco's appointment. Even if plaintiffs were seeking to change the status quo, RDI has shown that the "facts and law clearly favor" them with respect to the legality of Marocco's appointment. *See Columbia Hosp. for Women Found., Inc.*, 15 F. Supp. 2d at 4.

of itself constitute irreparable harm" because courts may remediate the loss. *Wis. Gas Co.*, 758 F.2d at 674. An exception exists when "the loss threatens the very existence of the movant's business." *Id.* That exception is present here. RDI receives all its funding from USADF, and the firm is unable to meet its financial obligations absent funding from USADF. Makasa Decl. ¶¶ 2, 5, 7. Moreover, were RDI to close its doors, Zambian law requires RDI to pay its employees for one month's salary in advance of termination and a redundancy package equivalent to two months' salary for each year its employees were employed (equivalent to approximately $100,000). *Id.* ¶ 7. RDI cannot meet that obligation. It only has $24,000 in its reserves and has been unsuccessful in obtaining funding from other sources. *Id.* ¶¶ 7, 10. Given that RDI is entirely dependent on its funding from USADF, and its legal obligations "far exceed" its reserves, the firm has offered sufficient "proof" that its existence is threatened. *See Wis. Gas Co.*, 758 F.2d at 674.

Olson and Chi have not, however, shown irreparable injury. Olson and Chi state (verbatim) that their victory will be empty after final relief because "[they] do not think [they] will be able to perform [their] job functions in the same manner as before [their] termination[s]." Pls.' Mot., Ex. C, Decl. of Paul Olson ("Olson Decl.") [Dkt. #7-4] ¶ 11; *id.*, Ex. D, Decl. of Solomon Chi ("Chi Decl.") [Dkt. #7-5] ¶ 11. Specifically, it will require "greater effort" to do their jobs if final relief comes after a "lengthy delay." *Id.* Surely, these injuries cannot meet the "high standard" of irreparable injury. *See England*, 454 F.3d at 297. Olson and Chi also assert that they will suffer "reputational damage" from Marocco's actions. Olson Decl. ¶ 12; Chi Decl. ¶ 12. While harm to reputation can, in

certain circumstances, constitute irreparable injury, "vague and unsupported" assertions of harm are not sufficient. *See Brodie v. U.S. Dep't of Health and Hu. Serv.*, 715 F. Supp. 2d 74, 84 (D.D.C. 2010). Thus, they have not met their burden.

### III.    Balance of the Equities and the Public Interest

Lastly, the balance of the equities and the public interest also weigh in favor of plaintiffs. While defendants argue that a preliminary injunction would be an "intrusion" on the President's authority, the President has likely exceeded his authority in appointing Marocco as an acting USADF Board member. The Government "cannot suffer harm from an injunction that merely ends an unlawful practice[.]" *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 191 (D.D.C. 2015) (quoting *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013)). Moreover, "[t]here is generally no public interest in the perpetuation of unlawful agency action." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). Defendants have therefore failed to state any concrete harm flowing from the issuance of an injunction.

*    *    *

Accordingly, the Court finds that all factors weigh in favor of RDI—but not Olson and Chi. While plaintiffs are likely to succeed on the merits of their challenge to Marocco's appointment, only RDI has shown irreparable harm. The equities and public interest in ensuring that defendants abide by law are significant. The Court will therefore grant RDI's request for a preliminary injunction.

### IV.    Security and Scope of Preliminary Injunction

The final two issues the Court addresses are Rule 65(c) of the Federal Rules of Civil

Procedure's bond requirement and the scope of the injunction.

As to the issue of a bond, the Court may grant a motion for preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). District courts have "broad discretion . . . to determine the appropriate amount of an injunction bond." *DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999). "Exercising that discretion, federal courts typically require substantial bonds only in suits between private parties with significant monetary interests at stake." *League of United Latin Am. Citizens v. Exec. Off. of the President*, No. 25-0955, 2025 WL 1187730, at *61 (D.D.C. Apr. 24, 2025) (citing 11A C. Wright & A. Miller, Federal Practice and Procedure § 2954 nn.15–20 (3d ed. 2025)). And our Circuit has held that courts may "dispense with any security requirement whatsoever" when defendants have not shown that the absence of a bond would materially damage them. *Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 759 (D.C. Cir. 1980). In opposing plaintiffs' motion, defendants have not argued that they will suffer monetary loss if the Court were to issue an injunction. Therefore, the Court will not require RDI to post a bond.

Turning to the scope of the preliminary injunction, RDI requests that the Court preliminarily enjoin all defendants—including the President of the United States in his official capacity. *See* Pls.' Proposed Order [Dkt. #7-8] at 1. The Court does not have the power to "enjoin the President in the performance of his official duties." *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 501 (1867); *see McCray v. Biden*, 574 F. Supp. 3d 1, 8–11 (D.D.C. 2021) (collecting cases). While courts may have the power to enjoin the

President to discharge ministerial duties, RDI's requests surely exceed the President's ministerial duties. *See Harris v. Bessent*, No. 25-5037, 2025 WL 1021435, at *5 n.2 (D.C. Cir. Apr. 7, 2025) (Rao, J., dissenting) (collecting cases); *see* Pls.' Proposed Order at 1 (requesting, in part, that the Court enjoin all defendants from appointing any person as an acting member of USADF's Board and president of the agency). The Court may, however, enjoin the President's subordinates who attempt to carry out his directives. *See Chamber of Com. v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996). I will therefore limit the injunction to Marocco and the other defendants who are carrying out his directives.

## CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART AND DENIES IN PART** plaintiffs' Motion for Preliminary Injunction.

*[signature]*
RICHARD J. LEON
United States District Judge