UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RURAL DEVELOPMENT INNOVATIONS LIMITED, *et al.*,

Plaintiffs,

v.

PETER MAROCCO, *et al.*,

Defendants.

Civil Action No. 25-1631 (RJL)

**MOTION TO MODIFY THE PRELIMINARY INJUNCTION**
**MEMORANDUM IN SUPPORT THEREOF**

## TABLE OF CONTENTS

Introduction ........................................................................................1

Background ........................................................................................ 1

Legal Standard ........................................................................................3

Argument ........................................................................................ 3

Conclusion ........................................................................................7

Defendants are various government components and officials sued in their official capacities. They respectfully submit this memorandum in support of their motion to modify the preliminary injunction entered by this Court on July 1, 2025. ECF No. 27.

**INTRODUCTION**

In *Trump v. CASA*, 145 S. Ct. 2540 (2025), the Supreme Court held that district courts do not have equitable powers to issue "universal injunction[s]," barring the government from enforcing "a law or policy against *anyone*." *Id.* at 2548. The Supreme Court emphasized that while courts in equity may fashion a remedy that provides the aggrieved party with "complete relief," the concept of "'complete relief' is not synonymous with 'universal relief.'" *Id.* at 2557. And even "[c]omplete relief is not a guarantee—it is the maximum a court can provide." *Id.* at 2558. Put another way: completeness is "a ceiling"—not "a mandate." *Id.* at 2563 (Thomas, J., concurring).

Consistent with these principles, Defendants request that the Court modify its preliminary injunction—which universally enjoined Peter Marocco from taking actions as the acting chairperson and president of the United States African Development Foundation and all other Defendants from implementing or giving effect to directives from Marocco that he gave in that capacity. The preliminary injunction should be limited to cover only actions taken insofar as they affected Plaintiff Rural Development Innovations Limited, the sole party that this Court concluded established its entitlement to preliminary relief.[1]

**BACKGROUND**

On February 24, 2025, President Trump removed the members of the U.S. African Development Foundation ("the Foundation") Board of Directors. First Marocco Decl. ¶ 4 (*Brehm*

---

[1] Plaintiffs oppose the relief sought in this motion. *See* Jt. Status Rpt. (ECF No. 28).

*v. Marocco*, Civ. A. No. 25-660 (RJL) (ECF No. 31-3)). Four days later, President Trump designated Marocco as acting Chairman of the Foundation Board. *Id.* ¶ 5. Marocco took steps to implement President Trump's Executive Order, directing that the Foundation be reduced to its core statutory functions, which involved implementing a reduction in force of Foundation employees and canceling Foundation grants. Third Marocco Decl. ¶¶ 9-13 (*Brehm v. Marocco*, Civ. A. No. 25-660 (RJL) (ECF No. 35-1)); *see also* Exec. Order No. 14,217, 90 Fed. Reg. 10577 (Feb. 25, 2025).

Plaintiff Rural Development Innovations ("RDI") is a Foundation grantee, whose grant was canceled at Marocco's direction. Compl. ¶ 13 (ECF No. 1). Plaintiffs Paul Olson and Solomon Chi are former Foundation employees, who were removed from their positions as part of the reduction in force. *Id.* ¶¶ 14-15. On May 21, 2025, Plaintiffs sued, challenging Marocco's temporary designation as chairman of the Foundation Board and the subsequent changes that Marocco made at the Foundation. *Id.* Plaintiffs also moved for a preliminary injunction, seeking Marocco's removal as acting Chairman of the Foundation Board and voiding all actions that Marocco took as chair. Mot. For Prelim. Inj. (ECF No. 7).

On July 1, 2025, the Court granted the preliminary injunction in part and denied it in part. Order (ECF No. 27). The Court granted preliminary relief for RDI, but denied it for Olson and Chi. The Court concluded that unlike RDI, Olson and Chi had not established that they would suffer irreparable harm absent preliminary relief. Mem. Op. at 12-13 (ECF No. 26). Although the Court concluded that only RDI was entitled to preliminary relief related to its cancelled grant, the Court nonetheless ordered that Marocco "is preliminarily enjoined from taking actions as the acting chairperson of United States African Development Foundation's Board of Directors and president;" and "preliminarily enjoined [Defendants] from implementing or giving effect to

directives from Marocco that he took in the capacity as the acting chairperson of USADF's Board of Directors and president of USADF." Order at 1-2. As elaborated below, the broad nature of the Court's order is now inconsistent with the Supreme Court's ruling in *CASA*.

## LEGAL STANDARD

Courts have discretion to modify a preliminary injunction. In particular, Federal Rule of Civil Procedure 54(b) authorizes the Court to revise its interlocutory orders "at any time." The Supreme Court has recognized that this power of a district court to modify a preliminary injunction "is long-established, broad, and flexible." *Brown v. Plata*, 563 U.S. 493, 542 (2011).

## ARGUMENT

In light of the Supreme Court's decision in *CASA*, the Court should modify the preliminary injunction such that its effect runs only to RDI, the sole party that established an entitlement to preliminary relief. The Court enjoined Marocco "from taking actions as the acting chairperson of United States African Development Foundation's Board of Directors and president," and it further enjoined Defendants from "implementing or giving effect to directives from Marocco that he took in the capacity as the acting chairperson of USADF's Board of Directors and president of USADF," Order at 1-2. Defendants interpret the plain language of the order to extend beyond simply requiring them to restore RDI's grant; instead, Defendants interpret the order as requiring them to reverse any actions that they took at Marocco's direction while he was acting as chair of the Foundation—a scope much larger than the direct relief RDI, as an individual plaintiff, is entitled to.[2] *Id.* Under this interpretation of the order, the scope of relief would include restoring, not just RDI's grant, but *all* 353 grants that Marocco cancelled as acting chair. Third Marocco

---

[2] To the extent the Court intended for the injunction to extend no further than RDI, the Defendants respectfully request that the Court issue an order to clarify the injunction's scope.

Decl. ¶ 11.  Other than RDI, none of these grant recipients were parties to the case and none established his or her entitlement to the extraordinary remedy of a preliminary injunction.  Likewise, the Court's order requires Defendants to restore the 43 contracts that Marocco canceled, even though not a single contractor was a party to this suit.  Third Marocco Decl. ¶ 13; Order at 1-2.  And the Court's order requires Defendants to rehire the sixteen employees that Marocco terminated, including plaintiffs Olson and Chi.  Third Marocco Decl. ¶ 12; Order at 1-2.  But none of the former employees established his or her entitlement to preliminary injunctive relief; to the contrary, this Court expressly concluded that Olson and Chi were not entitled to preliminary relief.  Mem. Op. at 13.

By its own terms, the Court's order provides relief to non-parties, which is inconsistent with the Supreme Court's ruling in *CASA*.  *CASA* held that a district court's grant of equitable relief is bound by the Judiciary Act of 1789, which "endowed federal courts with jurisdiction over 'all suits . . . in equity,' and "still today is what authorizes the federal courts to issue equitable remedies[.]"  *CASA*, 145 S. Ct. at 2551.  That "statutory grant encompasses only those sorts of equitable remedies 'traditionally accorded by courts of equity' at our country's inception."  *Id*. (*quoting Grupo Mexicano de Desarrollo, S. A. v. All. Bond Fund, Inc*., 527 U.S. 308, 319 (1999)).  *CASA* addressed "universal injunctions," which are injunctions that bar the defendant from enforcing "a law or policy against anyone," in contrast to an injunction that bars the defendant from enforcing the challenged law or policy against a single plaintiff.  *See* 145 S. Ct. at 2550.  "Congress has granted federal courts no such power," as universal injunctions have no historical analogue in equity practice.  *Id*.

Observing that the Court had "consistently rebuffed requests for relief that extended beyond the parties," *id*. at 2252, the *CASA* court determined that "[n]othing like a universal

injunction was available at the founding, or for that matter, for more than a century thereafter. Thus, under the Judiciary Act, federal courts lack authority to issue them." *Id*. at 2560. Instead, the governing principle is that a court granting equitable relief "may administer complete relief *between* the parties." *Id.* at 2557 (emphasis added). "Under this principle, the question is not whether an injunction offers complete relief to everyone potentially affected by an allegedly unlawful act; it is whether an injunction will offer complete relief to the plaintiffs before the court." *Id.* (*citing Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)). Even then, "[c]omplete relief is not a guarantee—it is the maximum a court can provide." *CASA*, 145 S. Ct. at 2558. Thus, "the broader and deeper the remedy the plaintiff wants, the stronger the plaintiff 's story needs to be." *Id*. Focusing on the "plaintiffs before the court," and not "everyone," is especially important because "[w]hen a federal court enters a universal injunction against the Government," "it 'improper[ly] intru[des]' on 'a coordinate branch of the Government' and prevents the Government from enforcing its policies against nonparties." *Id*. at 2561 (*quoting INS v. Legalization Assistance Project of L.A. Cnty. Fed'n of Labor*, 510 U.S. 1301, 1306 (1993)).

Applying those principles here, the Court could afford RDI "complete relief" by ordering the restoration of its grant with the Foundation. Such relief would, at this preliminary stage of the litigation, remedy the harm that forms the basis of RDI's suit. *See* Mem. Op. at 6-7 (explaining that "RDI would not have standing to advance its claims if Marocco had not terminated its funding"). But the preliminary injunction that the Court actually issued, extends far beyond that. As explained above, it enjoins Marocco from taking *any* "actions" in his role, and it enjoins the Defendants from giving effect to *any* "directives" that Marocco issued. Order 1. By requiring Defendants to, among other things, restore all grants and contracts, as well as to rehire all Foundation employees, the injunction provides relief to scores of entities that never appeared

before this Court and that never established their entitlement to the benefit of this Court's injunctive relief. That is precisely the type of "universal injunction" that the Supreme Court in *CASA* held exceeded the scope of district courts' equitable authority. 145 S. Ct. at 2550. Thus, the preliminary relief must be confined to RDI, the only grant recipient who filed suit and established its right to a preliminary injunction, because this Court would "lack authority to issue" broader equitable "relief that extended beyond the parties." *Id.* at 2558.

Given that restoring RDI's grant affords it complete relief, the Court's injunction should extend no further than that. But even if an injunction reaching beyond RDI could theoretically make RDI's relief "more complete," *id.*, such an injunction is not warranted here. The scope of the injunction must be consistent with the long-standing principle that courts should not issue an injunction that "is 'more burdensome than necessary to redress' [plaintiff's] asserted harms." *Id.* (*quoting Califano v. Yamasaki*, 442 U. S. 682, 702 (1979)). Here, the scope of any injunction extending beyond RDI's single grant is unduly burdensome, because it would require Defendants to unwind already completed personnel and funding decisions that have no connection to the parties before this Court. Applying the complete-relief principle in such an expansive manner "risk[s] replicating the problems of universal injunctions under the guise of granting complete relief." *CASA*, 145 S. Ct. at 2563 (Thomas, J., concurring); *see also id*. at 2565 ("Courts may not use the complete-relief principle to revive the universal injunction.").

Accordingly, because this Court's preliminary injunction order does not comport with *CASA*, Defendants request that this Court modify the injunction, so that it only requires Defendants to restore RDI's grant. *See CFTC v. Battoo*, 790 F.3d 748, 751 (7th Cir. 2015). ("district judge[s] ha[ve] discretion to revise a preliminary remedy if persuaded that change had benefits for the parties and the public interest"); *Sierra Club v. Army Corps of Engr's,* 732 F.2d 253, 256 (2d Cir.

1984) ("When modifying a preliminary injunction, a court is charged with the exercise of the same discretion it exercised in granting or denying injunctive relief in the first place"). In light of *CASA*, modification of the scope of the injunction is not just in the public interest—it is *required* as a matter of law.

**CONCLUSION**

For these reasons, the Court should grant Defendants' motion to modify the preliminary injunction.

Dated: August 26, 2025

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: * /s/ John J. Bardo*
JOHN J. BARDO
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2539

*Attorneys for the United States of America*