UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RURAL DEVELOPMENT INNOVATIONS LIMITED et al.,<br><br>Plaintiffs,<br><br>v.<br><br>PETE MAROCCO, et al.,<br><br>Defendants. | Civil Action No. 25-1631 (RJL) |

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO MODIFY THE PRELIMINARY INJUNCTION**

Defendants, various government agencies and officials sued in their official capacities, respectfully submit this reply in further support of their motion to modify the preliminary injunction ("Mot to Modify" (ECF No. 29)).[1]

## INTRODUCTION

As Defendants explained, *see* Mot. to Modify at 5 (ECF No. 25), this Court's preliminary injunction is overbroad and inconsistent with the Supreme Court's ruling in *Trump v. CASA Inc.*, 606 U.S. 831 (2025), because the injunction extends beyond the only party—Rural Development Innovations Limited ("Rural Development")—that under the Court's reasoning established an entitlement to preliminary injunctive relief. *See* Mem. Op. at 14 (ECF No. 26). Indeed, Plaintiffs Rural Development, Paul Olson, and Solomon Chi, do not dispute the basic point that the injunction applies to various entities, including non-parties that did not establish an entitlement to a preliminary injunction. That is conclusive of the merits of this motion. Accordingly, the Court should modify the preliminary injunction, Order (ECF No. 27), so that the injunction applies only to Rural Development—i.e., the one party that established an entitlement to such relief.

## ARGUMENT

### I. The Supreme Court's Ruling in *CASA v. Trump* Requires the Court to Modify the Preliminary Injunction.

In *CASA*, 606 U.S. at 841, the Supreme Court held that Congress never vested the federal courts with the power to issue universal injunctions. Yet in preliminarily enjoining Defendants from "implementing or giving effect to directives from [Peter] Marocco that he took in the capacity

---

[1] The Government files this reply notwithstanding the Court's Standing Order No. 25-55, which stayed and extended deadlines in civil cases involving the federal government during the pendency of the current lapse in appropriations. As this filing seeks to narrow the scope of an injunction, the delay of which has a reasonable likelihood of compromising government property to a significant degree, the government believes that the Court's Standing Order does not apply to this deadline and this filing is work excepted from the lapse under guidance regarding the same.

as the acting chairperson of [U.S. Africa Development Foundation's ("the Foundation")] Board of Directors and president of [the Foundation][,]" Order (ECF No. 27), the Court issued a universal injunction. The injunction is universal because it extends not only to the other plaintiffs in this action, who had not established that they would suffer irreparable harm absent preliminary relief, but also to various other entities that were not parties to this action. Because the injunction extends beyond the sole party that established an entitlement to such relief, it is overbroad and in violation of the principles underlying *CASA*.

Plaintiffs suggest that *CASA* is distinguishable because the case involved "prohibit[ing] the Government from enforcing a challenged law against anyone, anywhere." Opp'n. 2-3. But the same is true of the injunction at issue here. The Court's injunction bars Marocco from taking any "actions" against anyone, and it enjoins the Defendants from giving effect to any "directives" that Marocco issued in any context. Order (ECF No. 27). Even more fundamentally, it makes no difference whether the injunctions in *CASA* restrained the Government in a different manner than the injunction restrains the Government here. The point is that whatever form the Court's injunction takes, it violates basic equitable principles for the injunction to grant relief to nonparties. *CASA*, 606 U.S. at 841

Plaintiffs argue that *CASA* does not apply in this case because their claims are based on the premise that the Constitution and the Federal Vacancies Reform Act ("Vacancies Act") prohibit Marocco's appointment to the Foundation Board in the first place. Opp'n at 4 (ECF No. 31). Plaintiffs claim the appropriate remedy to such a challenge is through the Vacancies Act, which provides that any action taken by an official not acting under the Vacancies Act "shall have no force or effect." Opp'n at 5 (quoting 5 U.S.C. § 3348(d)(1)). But in advancing this argument, Plaintiffs add commentary to the Court's opinion that is not there. Mem. Op. (ECF No. 26).

In entering the preliminary injunction, the Court determined that "the Constitution likely does not vest the President with the authority to appoint Marocco as an acting Board member at [the Foundation]." Mem. Op. at 10 (ECF No. 26). Defendants had argued that President Trump lawfully designated Marocco to act as chair of the Foundation board because the President made the designation pursuant to his inherent constitutional authority to "take care that the laws be faithfully executed." Def. Opp'n to Mot. for Prelim. Inj. at 9 (ECF No. 12) (quoting U.S. Const. Art. II, § 1, cl. 1; id. § 3). To be sure, Congress has enacted statutes like the Vacancies Act to limit the President's authority to designate acting officials, but Congress chose not to make the Vacancies Act applicable to "any member who is appointed by the President, by and with the advice and consent of the Senate to any board, commission, or similar entity that is composed of multiple members; and governs an independent establishment or Government corporation." 5 U.S.C. § 3349c(1). As a government corporation run by a multi-member board, 22 U.S.C. § 290h-5(a)(1), the Foundation falls in this exception to the Vacancies Act. 5 U.S.C. § 3349c(1). Thus, the Vacancies Act could not have prevented President Trump from designating Marocco as the acting Chair of the Foundation Board and nothing in the Court's opinion suggests otherwise. See generally Mem. Op. (ECF No. 26).

Although the Vacancies Act removes any "force or effect" from "an action taken by any person who is not acting under" the provisions of the Act, 5 U.S.C. § 3348(d)(1), the Court never made a finding that Marocco's appointment was made in violation of the Vacancies Act or stated that it was affording Plaintiffs relief under the Vacancies Act. See generally Mem. Op. (ECF No. 26). The Court simply rejected Defendants' arguments that the President had inherent authority under Article II of the Constitution to designate an acting board member and found that the President may only select board members with the advice and consent of the Senate. *Id.* at 11.

Further, the Vacancies Act's remedial provision also speaks in terms of party-specific relief by providing that "[a]n agency action" undertaken by an improperly appointed official shall have no effect, not that all actions taken by such an official are automatically null and void. 5 U.S.C. § 3348(d)(1). That is why courts that have found a violation of the Vacancies Act to which § 3348(d) applies invalidate the specific agency action challenged; they do not vacate all the improperly appointed official's actions. *See, e.g.*, *Asylumworks v. Mayorkas*, 590 F. Supp. 3d 11, 22 (D.D.C. 2022) (invalidating challenged rule only). Thus, even if the Court had intended to afford relief through the Vacancies Act, the relief should have been limited to vacating Marocco's actions to the extent that they impacted Rural Development.

The Court would be exceeding its equitable authority if it were to extend complete relief to any parties other than the parties before it. *CASA*, 606 U.S. at 852-53. Accordingly, the Court should limit the relief afforded in the preliminary injunction to Rural Development, the sole party before the Court that the Court determined had established the four factors that are necessary to demonstrate entitlement to preliminary injunctive relief. Mem. Op. at 14 (ECF No. 26). To the extent that other stakeholders, including other grant recipients, contractors, and Foundation employees believe they are entitled to preliminary relief stemming from Marocco's actions, those stakeholders must "file [their] own suit" to allow the Court to evaluate their individual claim. *CASA*, 606 U.S. at 852. Indeed, the Court already determined that Olson and Chi had not demonstrated that they are entitled to preliminary injunctive relief. Mem. Op. at 14 (ECF No. 26).

## II. <u>Modifying the Preliminary Injunction is not "Practically Impossible."</u>

Plaintiffs argue that modifying the injunction so that it only provides relief to Rural Development would be "practically impossible." Opp'n at 7. Those purported difficulties, however, implicate the Government's equities, not Plaintiffs' equities, and it is unclear how

Plaintiffs can defend overbroad relief based on purported practical difficulties faced by the Government. The alleged difficulties, moreover, are entirely overblown. Complying with the modified injunction would only require the Government to give Rural Development the benefits it received before Marocco terminated the grant. Rural Development receives all its funding from a cooperative agreement that it has with the Foundation and Marocco's decision to terminate the cooperative agreement eliminated Rural Development's sole funding source. Makasa Decl. ¶¶ 5-6, 8 (ECF No. 7-2). Rural Development requests disbursements "to cover its expenses for two or three months at a time" and when it needs funds, Rural Development asks "its regular contacts with [the Foundation] for a disbursement from an account held by [the Foundation]." *Id.* ¶ 9. Crucially, Marocco did not seek to eliminate the Foundation, Marocco only sought to "reduce the performance of" the Foundation to its "statutory functions and associated personnel to the minimum presence and function required by law." Exec. Order 14,217, 90 Fed. Reg. 10577 (Feb. 25, 2025); Marocco Decl. ¶ 8, *Brehm v. Marocco*, Civ. A. No. 25-0660 (RJL) (D.D.C. Mar 31, 2025), ECF No. 31-3. Under Marocco's leadership, the Foundation retained thirteen employees and eight contracts. Marocco Decl. ¶¶ 14, 16, *supra*. The Foundation would not need to reinstate any employees or renew any contracts simply to service a cooperative agreement with Rural Development.

Contrary to Plaintiffs arguments, the Court would not need to inert itself into the day-to-day operations of the Foundation determine whether and how each of Marocco's actions affected Rural Development. Opp'n at 7. To comply with the modified injunction that Defendants propose, the remaining staff at the Foundation would simply need to disperse funds to Rural Development every two or three months, so that Rural Development can continue to receive the same funding that it received prior to when Marocco terminated its grant. Because terminating the cooperative

agreement is the only action that Marocco took that affected Rural Development, Makasa Decl. ¶¶ 5-6, 8-9 (ECF No. 7-2), restoration of the agreement is the only remedy that Rural Development needs in obtain "complete relief." *CASA*, 606 U.S. at 852.

In any event, even if there were practical difficulties associated with a more limited injunction, that would not overcome the fact that courts lack the authority to issue injunctions—like this one—that extend to parties that failed to establish an entitlement to such relief. At bottom, the Court lacked the authority to issue the overbroad injunction.

## CONCLUSION

For these reasons, and the reasons stated in Defendants' opening motion, the Court should grant Defendants' motion to modify the preliminary injunction.

Dated: October 6, 2025
Washington, DC

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

BRIAN P. HUDAK, D.C. Bar #90034769
Chief, Civil Division

By: *\/s/ John J. Bardo*
JOHN J. BARDO, D.C. Bar #165334
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2539

*Attorneys for the United States of America*