IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Rural Development Innovations Limited** *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>**Pete Marocco** *et al.*,<br><br>    Defendants. | **Civil Case No. 25-cv-1631** |

**MOTION TO RECONSIDER MODIFICATION OF THE PRELIMINARY INJUNCTION OR, IN THE ALTERNATIVE, TO ENFORCE COMPLIANCE**

   Defendants are either unwilling or unable to comply with this Court's preliminary injunction. When Defendants moved to narrow the preliminary-injunction order, Plaintiffs explained that Defendants were seeking a distinction without a difference; this Court could not extend effective relief to RDI while leaving Defendants in control of any aspect of USADF's operations. Subsequent events have proven this observation to be correct. For the reasons that follow, Plaintiffs respectfully request that the Court reconsider its modification of the preliminary-injunction order because Defendants are incapable of implementing the order as modified or, in the alternative, order Defendants to take the necessary steps to restore RDI to the status quo. Plaintiffs' counsel conferred with Defendants' counsel, who oppose this motion.

1

**1.** On July 1, this Court granted a preliminary injunction, concluding that Pete Marocco likely had no legal authority to act as the sole USADF board member. *See* Mem. Op., Dkt. No. 26. As a result, the Court ordered the return to the status quo ante—"the last *uncontested* status which preceded the controversy." Mem. Op. 12 n.3 (quoting *Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 733 (D.C. Cir. 2022)). That meant a return to the state of play "right before Marocco's appointment." *Id.* Following the Court's order—and with the Management Committee in charge as the prior Board had determined—USADF staff spent months returning USADF operations to normal. Ex. A, Feleke Decl. ¶ 5.

Almost two months later, Defendants moved to narrow the injunction, arguing that RDI would still receive complete relief under a narrowed preliminary injunction. Mot. to Modify P.I. (Mot.) 5-6, Dkt. No. 29. Plaintiffs explained that a narrowed injunction would not grant RDI complete relief and would be unworkable because returning RDI to the status quo would require RDI to be able to interact with a functioning agency, including agency personnel who could participate in all aspects of the agency's partnership with RDI, and such a requirement could not be fulfilled if Marocco were to assert that he retained control of the agency for some purposes. *See* Opp'n to Mot. 4-6, Dkt. No. 31. Defendants called those concerns "entirely overblown." Reply 5, Dkt. No. 33.

**2.** Plaintiffs' concerns were not overblown; in the weeks since the Court granted the motion to narrow the preliminary injunction, Defendants have shown that, at

2

best, they are unable to comply with the order. At worst, they are outright ignoring it.

As explained in our prior filings, USADF requires staff to implement and oversee current grants, including RDI's. *See, e.g.*, Mem. in Supp. of Pls.' Mot. for P.I. 9-12, Dkt. No. 7-1; Ex. E, Feleke Decl. ¶¶ 28-33, 37-40, Dkt. No. 7-6; Opp'n to Mot. 4-5, Dkt. No. 31. That is because RDI's relationship with USADF involves much more than the mere payment of money. Ex. A, Feleke Decl. ¶ 21. For example, RDI relies on USADF staff for critical guidance on maintaining relationships with foreign governments and organizations, managing field personnel, technical challenges implementing the grant, training, project monitoring, and safeguarding and protecting USADF assets. *Id.* at ¶¶ 22-23. USADF also provides RDI guidance on making sure that it is satisfying its legal obligations and those under its grant agreement. Ex. B, Makasa Decl. ¶ 11. As a result, RDI communicates with USADF staff at least weekly. *Id.* at ¶ 4. At a minimum, eight to ten employees are required to carry out the terms of RDI's grant. Ex. A, Feleke Decl. ¶ 20. And without USADF staff, RDI's grant agreement is "practically impossible to work or implement." Ex. B, Makasa Decl. ¶ 12.

Yet on November 26, Marocco shut off access to every USADF employee by deactivating their access cards. Marocco told (at least) one of USADF's vendors, that according to this Court's most-recent order, he is now the President of USADF. Ex. A, Feleke Decl. ¶ 7. He instructed the vendor to deactivate the access cards for every USADF employee other than himself. *See id.* On December 12, USADF staff also lost

all remote access to USADF IT systems. *Id.* at ¶ 17. As a result, "USADF has lost all official and direct communication with RDI." *Id.* at ¶ 19.

Likewise, Defendants' assurances that merely "restoring RDI's grant affords RDI complete relief," Mot. 6, have also proven to ring hollow. RDI is currently awaiting guidance from USADF on how to seek and receive overdue payments. Ex. B, Makasa Decl. ¶¶ 4-7. And RDI relies on USADF to pay its regular operating costs. *Id.* at ¶ 10. Yet within the first two weeks of December, Marocco revoked all USADF staff access to USADF's financial systems. Ex. A, Feleke Decl. ¶ 10. Marocco listed himself as the only authorized user of USADF's financial systems. *Id.* at ¶ 11. Because no other USADF personnel can access or perform financial transactions, USADF is incapable of processing payments, obligating funds, and disbursing funds to anybody, including RDI. *Id.* at ¶ 12. As a result, since December 2, *every* invoice payment submitted to USADF has been automatically rejected. *Id.* at ¶ 12. And when USADF staff have informed the Treasury Department that they are willing to comply with this Court's order and provide the required relief to RDI, they have been met with silence. *Id.*

What's more, the most-recent financial report from Treasury shows that all of USADF's congressionally appropriated funds have been removed. *Id.* at ¶ 24. The financial report shows that USADF currently has *no* available funds. *Id.* Without funding, it is impossible for USADF to hold up its end of the relationship with RDI. *See id.* at ¶¶ 25-26.

The upshot is that RDI has not been returned to the status quo, as required by this Court's order. Instead, RDI has no means to communicate with, and receive

4

guidance from, USADF. *See* Ex. B, Makasa Decl. ¶ 11. And as a direct consequence of Marocco's recent actions, USADF is unable to pay RDI invoices, including those for rent, office maintenance, and internet. Ex. A, Feleke Decl. ¶ 15. Put simply, despite the Court's order, Marocco and the other Defendants are "interfering with USADF's performance of RDI's cooperative agreement," Mem. Order 6, Dkt. No. 34.

3. Under Federal Rule of Civil Procedure 54(b), the Court "has broad discretion" to modify its prior order "as justice requires," which includes when there has been "a significant change in the … facts" since the Court decided the issue. *Banks v. Booth*, 518 F.Supp.3d 57, 62 (D.D.C.) (quotations and citations omitted), *appeal dismissed*, 3 F.4th 445 (D.C. Cir. 2021).

Defendants' behavior over the past month has shown that it is not feasible for Marocco to be treated as the lawful head of USADF for some purposes and the agency's Management Committee to be treated as the lawful head for others. After the Court's preliminary-injunction order, USADF was able to return RDI to the status quo ante—including by paying its regular invoices and communicating with RDI. *See* Ex. A, Feleke Decl. ¶¶ 5-6, 16. But since the Court modified the preliminary injunction, there has been "a significant change in … the facts," *Banks*, 518 F.Supp.3d at 62. Marocco has again taken complete control of USADF. Among other violations of the preliminary injunction, he has locked out the Management Committee and every other employee needed to carry out USADF's relationship with RDI. *See* Ex. A, Feleke Decl. ¶ 4. As a result, payment processors at the Defendant Treasury Department, as well as USADF's vendors have accepted (and will continue to accept)

at face value Marocco's representations that he retains control over the agency, despite this Court's finding that he was not lawfully appointed, *see* Mem. Opp. 10-12, Dkt. No. 26.

So there is "only one feasible option" "[t]o afford the plaintiff complete relief" here, *Trump v. CASA, Inc.*, 606 U.S. 831, 851 (2025). Just as in a case involving a noise complaint, where "there is no way to peel off just the portion of the nuisance that harmed the plaintiff," *id.* at 852 (internal citation omitted), the only remedy that practically could afford RDI relief here is binary; Marocco either is the lawful manager of USADF's affairs, or he is not. Because this Court has already determined that he is not, and because Defendants have shown that they cannot abide by the preliminary injunction tailored to RDI, the Court should vacate its November 19 order and return to the July 1 preliminary injunction.

**4.** Alternatively, the Court should exercise its "power to enforce compliance with [its] lawful orders." *Armstrong v. Exec. Office of the President, Off. of Admin.*, 1 F.3d 1274, 1289 (D.C. Cir. 1993) (quoting *Shillitani v. United States*, 384 U.S. 364, 370 (1966)). This Court has "an inherent power at common law ... to 'protect [its] institutional integrity and to guard against abuses of the judicial process with contempt citations, fines, awards of attorneys' fees, and such other orders and sanctions as they find necessary, including even dismissals and default judgments.'" *Parsi v. Daioleslam*, 778 F.3d 116, 130 (D.C. Cir. 2015) (quoting *Shepherd v. Am. Broad. Cos., Inc.*, 62 F.3d 1469, 1472 (D.C. Cir. 1995)). The Court should exercise this

inherent power to specify Defendants' obligations under its modified preliminary injunction.

Defendants apparently are operating under the belief that they have free rein to purport to exercise control over USADF, and to use that power to render USADF completely inoperative, so long as they do not formally terminate the agency's grant agreement with RDI. But this Court's order was not so limited; again, this Court ordered a return to the status quo "right before Marocco's appointment," Mem. Op. 12 n.3, Dkt. No. 26, and enjoined Defendants from "interfering with USADF's *performance* of RDI's cooperative agreement," Mem. Order 6, Dkt. No. 34 (emphasis added).

Defendants' behavior in the aftermath of this Court's modification of the preliminary-injunction order demonstrates that they cannot be trusted to interpret that order for themselves. At a minimum, this Court should clarify that according RDI complete preliminary relief means a return to the status quo ante—not whatever Defendants think is good enough for RDI. Defendants have not returned RDI to the status quo ante simply by committing not to formally terminate its grant agreement or by asserting that they will try not to inhibit access to funds. Under the status quo ante, RDI was able to perform its role as a partner grantee of USADF, and the agency in turn was able to support RDI in its operations. At a minimum, to return RDI to the status quo requires that USADF have functioning IT and communications systems. It requires that RDI be able to communicate with USADF's expert staff. And, of course, it requires that USADF have a budget of more than $0.

\* \* \*

This Court previously concluded that reinstatement of grants and contracts was not necessary to provide RDI preliminary relief. Mem. Order 5, Dkt. No. 34. To be clear, Plaintiffs are not asking this Court to order USADF to reinstate grants, contracts, or employees. In fact, Plaintiffs are not asking the Court to order USADF (which is not a defendant here) to do anything at all. We are asking the Court to enforce its conclusion that because Marocco's appointment was likely illegal, a return to the status quo ante means that—at the very least, as it pertains to RDI—the Management Committee, not Marocco, leads USADF.

## CONCLUSION

For these reasons, the Court should vacate its November 19 order and return to the July 1 preliminary injunction or, in the alternative, direct that Defendants are enjoined from taking any actions that alter the status quo ante for RDI.

December 18, 2025                      Respectfully submitted,

                                       _/s/Bradley Girard_____
                                       Bradley Girard (DC Bar No. 1033743)
                                       Joel McElvain (DC Bar No. 448431)
                                       Robin F. Thurston (DC Bar No. 1531399)
                                       Skye Perryman (DC Bar No. 984573)
                                       Democracy Forward Foundation
                                       P.O. Box 34553
                                       Washington, DC 20043
                                       (202) 448-9090
                                       bgirard@democracyforward.org
                                       jmcelvain@democracyforward.org
                                       rthurston@democracyforward.org
                                       sperryman@democracyforward.org

                                       *Counsel for Plaintiffs*