IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Rural Development Innovations Limited, *et al.*,

          *Plaintiffs*,

*v.*

Pete Marocco, *et al.*,

          *Defendants*.

Civil Action No. 25-1631 (RJL)

**MEMORANDUM OPINION**

March 13, 2026 [Dkt. #36, 37, 42, 43]

Article II of the Constitution gives the President power to appoint "Officers of the United States" only "by and with the Advice and Consent of the Senate." The advice-and-consent requirement is "a calculated feature of the constitutional framework," "not a bug." *N.L.R.B. v. Noel Canning*, 573 U.S. 513, 601 (2014) (Scalia, J., concurring). President Trump appointed Pete Marocco on February 28, 2025 as acting Chair of the Board of the U.S. African Development Foundation ("USADF") without obtaining Senate approval. Marocco then made himself USADF president and proceeded to terminate nearly all of USADF's employees, grants, and contracts. On July 1, 2025, I held that Marocco's appointment was likely unlawful and granted a preliminary injunction, halting Marocco's efforts. Later I modified the preliminary injunction to narrow the scope of relief. Undaunted, Marocco once again assumed control of USADF and blocked the remaining USADF employees from using the USADF offices, IT systems, or financial systems. Plaintiff Rural Development Innovations Ltd. ("RDI"), a USADF grantee, used to

communicate regularly with USADF about the implementation of its grant. Now RDI appears to have no way to communicate with any USADF employees besides Marocco—whom this Court has already found was likely unlawfully appointed. Unfortunately for the defendants, the Constitution, principles of equity, and the Federal Vacancies Reform Act do not permit such a result. Therefore, the Court will **GRANT IN PART AND DENY IN PART** the parties' summary judgment motions and will enter declaratory and injunctive relief for plaintiffs.

## BACKGROUND

### I.    Pete Marocco's Appointment to USADF

As I described in my previous preliminary injunction opinion, USADF is "a federal agency established by Congress to support and invest in African-owned and African-led enterprises." *Rural Dev. Innovations Ltd. v. Marocco* ("*RDI*"), 2025 WL 1807818, at *1 (D.D.C. July 1, 2025), *opinion vacated on reconsideration*, 2025 WL 4083332 (D.D.C. Nov. 19, 2025). USADF makes grants to African organizations consistent with USADF's statutory purposes. *See id.*

The African Development Foundation Act ("USADF statute") "vests the management of USADF in a Board of Directors" ("Board"). *Id.* (citing 22 U.S.C. § 290h-5(a)(1)). "The Board is 'composed of seven members appointed by the President [of the United States], by and with the advice and consent of the Senate.'" *Id.* (alteration in original) (quoting 22 U.S.C. § 290h-5(a)(1)). The USADF statute in turn gives the Board authority to appoint the president of USADF. *See* 22 U.S.C. § 290h-5(d)(1).

On February 19, 2025, President Trump signed Executive Order 14,217, which

ordered that USADF "be eliminated to the maximum extent consistent with applicable law." Compl. [Dkt. #1] ¶¶ 44–47; 90 Fed. Reg. 10577, 10577 (Feb. 19, 2025). On February 28, 2025, USADF management were notified that "Pete Marocco had been appointed as Acting Chair of the Board of USADF." *Id.* ¶ 51. Marocco proceeded to appoint himself as president of USADF. *Id.* ¶ 52. Marocco then terminated the employment of numerous USADF employees, placed other employees on administrative leave, cancelled contracts, and terminated almost all partner grants. *Id.* ¶¶ 58–64. Among the grants terminated was that of Rural Development Innovations Ltd. ("RDI"), a Zambia-based consulting firm that "offers technical support to micro small and medium size enterprises." Pls.' Mot. for Prelim. Inj., Ex. A, Decl. of Victor Makasa [Dkt. #7-2] ¶¶ 2, 6. RDI relies on USADF for 100% of its funding. *Id.* ¶ 5. Marocco's layoff of USADF employees included Paul Olson and Solomon Chi. Compl. ¶¶ 14–15.

## II.    Preliminary Injunction

On May 21, 2025, RDI, Olson, and Chi ("plaintiffs") sued Pete Marocco, the Director of the White House Presidential Personnel Office, the U.S. DOGE Service, the U.S. DOGE Service Temporary Organization, the Acting Administrator of DOGE, the Acting Administrator of the General Services Administration, the Secretary of the Treasury, the Secretary of the Interior, and President Donald J. Trump ("defendants"). *See* Compl. Plaintiffs alleged that defendants acted *ultra vires* in violation of the Federal Vacancies Reform Act, the African Development Foundation Act, and the U.S. Constitution. *See id.* ¶¶ 75–93. Plaintiffs also brought a claim under the Administrative Procedure Act and sought declaratory and mandamus relief. *Id.* ¶¶ 94–102.

Plaintiffs moved for a preliminary injunction. *See* Mot. for Prelim. Inj. [Dkt. #7]. After briefing and a hearing, I granted the preliminary injunction on July 1, 2025 as to plaintiff RDI. *See RDI*, 2025 WL 1807818, at *1. I held that plaintiffs were likely to succeed in their arguments that the Court has jurisdiction. *Id.* at *3–4. On the merits, I held that the "Constitution likely does not vest the President with the authority to appoint Marocco as an acting Board member at USADF," and Congress likely "has not authorized the President to appoint acting USADF Board members." *Id.* at *5. I found that only plaintiff RDI had shown irreparable harm. *Id.* at *6.

I ordered that Marocco was "preliminarily enjoined from taking actions as the acting chairperson" of USADF and further ordered that defendants were "preliminarily enjoined from implementing or giving effect to directives from Marocco that he took in the capacity as the acting chairperson of USADF's Board of Directors and president of USADF." *See* Order [Dkt. #27].

"It took multiple months for USADF to implement" the preliminary injunction. Mot. to Reconsider, Ex. A, Decl. of Elisabeth Feleke ("Second Feleke Decl.") [Dkt. #36-1] ¶ 5. USADF's Management Committee ran the agency in the absence of a lawfully appointed Board or president. *Id.* ¶ 2.

## III.    Modification of the Preliminary Injunction

On August 26, 2025, defendants moved to modify the preliminary injunction in light of the Supreme Court's decision in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025). *See* Mot. to Modify the Prelim. Inj. [Dkt. #29]. I granted the motion and narrowed the scope of the preliminary injunction, ordering that defendants were "preliminarily enjoined from

implementing or giving effect to Marocco's termination of RDI's cooperative agreement," and that Marocco was "preliminarily enjoined from interfering with USADF's performance of RDI's cooperative agreement." Mem. Order [Dkt. #34] at 6.

## IV.    Plaintiffs' Motion for Reconsideration and the Parties' Summary Judgment Motions

On December 18, 2025, plaintiffs moved for reconsideration of the decision to modify the preliminary injunction or, in the alternative, to enforce the injunction. *See* Mot. to Reconsider Modification of the Prelim. Inj. or, in the Alternative, to Enforce Compliance ("Mot. to Reconsider") [Dkt. #36]. In support, plaintiffs reported that after the narrowing of the injunction, Marocco began asserting that he was "President and CEO of USADF." Second Feleke Decl. ¶ 7. Marocco directed that all USADF staff's access to their offices be terminated. *Id.* Marocco also terminated all USADF staff's access to the "U.S. Department of the Treasury financial systems," as well as "all remaining remote access to USADF IT systems." *Id.* ¶¶ 10, 17. These changes meant that all USADF employees— besides Marocco—"lost all official and direct communication with RDI." *Id.* ¶ 19.

Based on these facts, plaintiffs argued that "it is not feasible for Marocco to be treated as the lawful head of USADF for some purposes and the agency's Management Committee to be treated as the lawful head for others." Mot. to Reconsider at 5. Defendants opposed, arguing that "it is RDI that has refused to communicate with the Foundation." Defs.' Opp'n to Pls.' Mot. to Reconsider [Dkt. #40] at 1.

While the motion to reconsider was pending, the parties submitted a joint status report indicating their agreement to "convert the parties' respective submissions on

plaintiffs' motion for preliminary injunction to briefing on the parties' cross-motions for summary judgment on the merits." Joint Status Rep. [Dkt. #37] at 1. The parties submitted statements on the scope of final relief on January 26. *See id.*; *see also* Defs.' Statement Regarding the Scope of Relief ("Defs.' Statement on Relief") [Dkt. #42]; Pls.' Mem. Regarding Scope of Relief ("Pls.' Mem. on Relief") [Dkt. #43].

The motion to reconsider and the cross-motions for summary judgment are now ripe for decision. On February 24, plaintiffs reported that Marocco was attempting to fire the two remaining members of the USADF Management Committee. *See* Notice of Factual Developments [Dkt. #44]. On March 10, plaintiffs reported that Marocco was attempting to fire all remaining USADF employees except plaintiffs Olson and Chi, and "one employee who Marocco has directed to recover overseas assets and shut down field offices." Notice of Supplemental Authority & Factual Developments [Dkt. #45] at 2. Accordingly, plaintiffs say that "[t]ime is of the essence" and have requested a ruling on the pending motions. *Id.* at 3.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When deciding a motion for summary judgment, the Court "must assume the truth of all statements proffered by the non-movant except for conclusory allegations lacking any factual basis in the record." *Dist. Intown Props. Ltd. P'ship. v. Dist. of Columbia*, 198 F.3d 874, 878 (D.C. Cir. 1999). "When parties file cross-motions for summary judgment, each motion is considered separately, in the light most favorable

to the non-moving party, and the court must determine, for each motion, whether the Rule 56 standard has been met." *Am. Ctr. for Int'l Lab. Solidarity v. Chavez-DeRemer*, 789 F. Supp. 3d 66, 80 (D.D.C. 2025).

## ANALYSIS

### I.    Merits

Plaintiffs' claims fall into two categories. First, plaintiffs argue that Pete Marocco was unlawfully appointed as acting Chair and president of USADF, so any actions that he took in those roles are invalid. Second, plaintiffs argue that Marocco's actions—including canceling grants and terminating employees and contracts—violate the "separation of powers, the Spending Clause" and are "ultra vires by violating USADF's organic statute and appropriations statute." Pls.' Mem. in Supp. of Pls.' Mot. for Prelim. Inj. ("Pls.' PI Br.") [Dkt. #7-1] at 19. The Court will grant summary judgment to plaintiffs on the first set of claims and summary judgment to defendants on the second.[1]

### A.    Claims About Marocco's Unlawful Appointment

I previously held that plaintiffs were likely to succeed in their argument that Marocco was unlawfully appointed as an acting USADF Board member without the advice and consent of the Senate under the Appointments Clause. *See RDI*, 2025 WL 1807818, at \*5; *see also* U.S. Const. Art. II, § 2, cl. 2. I also held that "Congress has [likely] not authorized the President to appoint acting USADF Board members" under the Federal

---

[1] I previously rejected defendants' arguments that I lack jurisdiction over this case under the Tucker Act and the Civil Service Reform Act. *See RDI*, 2025 WL 1807818, at \*3. I adopt the same reasoning here and conclude that the Court has jurisdiction over plaintiffs' claims. *See Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 490 (2010) (court had jurisdiction when petitioners "object[ed] to the Board's existence").

Vacancies Reform Act ("FVRA"). *RDI*, 2025 WL 1807818, at *5. I see no reason to revisit this analysis and will grant summary judgment to plaintiffs on their claims about Marocco's unlawful appointment. *See Aviel v. Gor*, 2025 WL 1600446, at *2 (D.C. Cir. June 5, 2025) (Katsas, J., concurring) ("[I]t is unlikely that the Take Care Clause gives the President unfettered discretion to designate acting principal officers with neither Senate confirmation nor a Senate recess nor even statutory authorization through the FVRA."); *see also Aviel v. Gor*, 2025 WL 2374618, at *11 (D.D.C. Aug. 14, 2025) (Marocco's appointment as an "acting" member to the Board of the Inter-American Foundation "contravene[d]" Article II). Marocco's appointment as acting Chair of USADF without advice and consent of the Senate violates the Appointments Clause and is *ultra vires* under the FVRA and the USADF statute.[2]

### B.    Claims About Dismantling USADF

Separate from plaintiffs' challenge to Marocco's appointment, plaintiffs also challenge Marocco's actions as Chair and president of USADF under the Administrative Procedure Act ("APA"), the Constitution, and the USADF statute. Pls.' PI Br. at 19. I will grant summary judgment to defendants on these claims because (1) there is no discrete final agency action under the APA; (2) plaintiffs' constitutional claims are statutory; and

---

[2] Neither party explains or grapples with the requirements for *ultra vires* claims in our Circuit. For the plaintiffs' unlawful appointment claims, the requirements are satisfied because "(i) there is no express statutory preclusion of all judicial review" in either the FVRA or the USADF statute; "(ii) there is no alternative procedure for review of the statutory claim" because, among other reasons, the President (who appointed Marocco) is not subject to the APA, and (iii) the statutory requirement that appointments be made with the advice and consent of the Senate is "clear and mandatory." *Fed. Express Corp. v. U.S. Dep't of Com.*, 39 F.4th 756, 763 (D.C. Cir. 2022) (internal quotation marks omitted).

(3) defendants' actions do not rise to the level of *ultra vires*.

*First*, plaintiffs' APA challenge to the series of actions Marocco has taken at USADF fails for lack of final agency action. *See* 5 U.S.C. § 704; *id.* § 551(13). Final agency action must be "specific," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 894 (1990), and "discrete," *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004). "Under the terms of the APA, [plaintiff] must direct its attack against some particular 'agency action' that causes it harm" and "cannot seek *wholesale* improvement . . . by court decree." *Lujan*, 497 U.S. at 891. Plaintiffs claim that defendants "cannot unilaterally eliminate a congressionally created agency," Pls.' PI Br. at 21, but plaintiffs do not identify a single decision or rule shutting down USADF. Instead, plaintiffs argue that "eliminat[ing] USADF's staff" and "terminat[ing] the agency's contracts and grants" amount to shutting down the agency. *Id.* at 19. This Court, however, may not review an "abstract decision apart from specific agency action, as defined in the APA." *Biden v. Texas*, 597 U.S. 785, 809 (2022). Plaintiffs' APA claim thus fails for lack of discrete final agency action.[3]

*Second*, plaintiffs' constitutional separation-of-powers and Spending Clause claims are in effect statutory, so plaintiffs lack a constitutional cause of action to bring them. Plaintiffs argue that defendants have violated the separation of powers and the Spending

---

[3] The question of what constitutes a "discrete" final agency action is disputed in our Circuit and courts across the country. *See Nat'l Treasury Emps. Union v. Vought*, 149 F.4th 762, 783 (D.C. Cir. 2025), *reh'g en banc granted, opinion vacated*, No. 25-5091, 2025 WL 3659406 (D.C. Cir. Dec. 17, 2025); *Rhode Island v. Trump*, __ F. Supp. 3d __, 2025 WL 3251113, at *9 (D.R.I. Nov. 21, 2025), *appeal filed*, No. 26-1070 (1st Cir. Jan. 21, 2026). To the extent plaintiffs are simply challenging the grant terminations or loss of employment, those claims may require a different jurisdictional analysis. This Court's conclusion that it had jurisdiction rested on the premise that "this lawsuit is chiefly concerned with Marocco's appointment" and RDI's efforts to "remediate Marocco's allegedly unlawful appointment." *RDI*, 2025 WL 1807818, at *3.

Clause by effectively shutting down USADF and failing to spend money appropriated by Congress. Under *Global Health Council v. Trump*, 153 F.4th 1 (D.C. Cir. 2025), these are but statutory claims because they are really allegations that defendants have violated the USADF statute and the appropriations acts by canceling grants and refusing to spend appropriated funds. Plaintiffs' claims are thus "predicate[d]" on statutory violations, *id.* at 15, and cannot be repackaged as constitutional claims.

*Third*, absent a cause of action under the APA or Constitution, plaintiffs must satisfy the high bar for *ultra vires* claims. *See Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 681 (2025). For purposes of their "dismantl[ing] USADF" claim, Pls.' PI Br. at 19, plaintiffs have not. *Ultra vires* review "applies only when an agency has taken action entirely 'in excess of its delegated powers and contrary to a specific prohibition' in a statute." *Nuclear Regul. Comm'n*, 605 U.S. at 681 (emphasis omitted) (quoting *Ry. Clerks v. Ass'n for Benefit of Non-contract Employees*, 380 U.S. 650, 660 (1965)). Here, the statutes invoked by plaintiffs are not well-suited to *ultra vires* review. The USADF statute provides that USADF "shall carry out [its] purposes," including "strengthen[ing] the bonds of friendship and understanding between the people of Africa and the United States" and "support[ing] self-help activities at the local level designed to enlarge opportunities for community development." 22 U.S.C. § 290h-2. The relevant appropriations statute allocated $45 million to USADF "[f]or necessary expenses to carry out" the USADF statute. Further Consolidated Appropriations Act, 2024, Pub. L. No. 118-47, Div. F, tit. III, 138 Stat. 460, 746 (2024). Defendants' termination of employees, grants, and contracts does not rise to the level of a legal error "so extreme that one may view it as jurisdictional

or nearly so." *Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716, 722 (D.C. Cir. 2022) (internal quotation marks omitted); *see also New York v. Biden*, 636 F. Supp. 3d 1, 29 (D.D.C. 2022) (concluding that "[u]ndefined terms and phrases such as 'efficient,' 'meet the needs of,' and 'ready access to . . .' are not sufficiently specific or unambiguous as to be susceptible to *ultra vires* review").

## II.    Scope of Relief

The parties' most significant dispute is the appropriate scope of relief on plaintiffs' unlawful appointment claims.  Plaintiffs seek declaratory and injunctive relief ordering that "Marocco has no legal authority to serve at USADF and that the remaining Defendants (other than the President) cannot treat Marocco as ever having had that authority."  Pls.' Mem. on Relief at 1.  Defendants argue that any relief "should be limited to cover only actions Marocco took insofar as they affected Rural Development, Olson, and Chi."  Defs.' Statement on Relief at 2.  Specifically, defendants argue that relief should include only "permanent restoration of [RDI's] grant agreement" and "reinstatement of [Olson's and Chi's] employment."  *Id.*  Plaintiffs have the better argument here.  How so? [4]

### A.    Declaratory Relief

Plaintiffs are entitled to declaratory relief that (1) Marocco was not lawfully appointed as a Board member and president of USADF, and that (2) "action[s]" taken by Marocco "in the performance of any function or duty" of the USADF Board or president,

---

[4] The Court's grant of declaratory and injunctive relief precludes plaintiffs' request for mandamus relief because mandamus "is only proper where there is no other adequate remedy available." *Aviel*, 2025 WL 2374618, at *18.

have "no force or effect." 5 U.S.C. § 3348(d)(1).  Under the Declaratory Judgment Act, a court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "Whether to grant such a remedy 'always rests within the sound discretion of the court.'" *Aviel v. Gor*, 2025 WL 2374618, at *14 (D.D.C. Aug. 14, 2025) (quoting *President v. Vance*, 627 F.2d 353, 364 n.76 (D.C. Cir. 1980)).

Declaratory relief is justified here because it will "serve a useful purpose in clarifying the legal relations at issue" and will "afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Glenn v. Thomas Fortune Fay*, 222 F. Supp. 3d 31, 36 (D.D.C. 2016) (citing *Vance*, 627 F.2d at 364 n.76).  Indeed, the center of this controversy is whether Marocco was lawfully appointed and whether he may act, in any capacity, as a Board member or president of USADF.  Declaratory relief will help to "clarify[]" Marocco's "legal relation[ship]" to plaintiffs. *Id.*

It follows that Marocco's actions as Board member and president of USADF are void under the Constitution and the FVRA.  Regarding the Constitution, the Supreme Court has suggested that where there is a "constitutional defect" regarding "appointment to [an] office," "actions taken by" that office may be "void." *Collins v. Yellen*, 594 U.S. 220, 257–58 (2021); *see also id.* at 283 (Gorsuch, J., concurring) ("Whether unconstitutionally installed or improperly unsupervised, officials cannot wield executive power except as Article II provides.  Attempts to do so are void."); *Noel Canning v. N.L.R.B.*, 705 F.3d 490, 493 (D.C. Cir. 2013) (order of unlawfully constituted board was "void ab initio"), *aff'd on other grounds*, 573 U.S. 513 (2014).

Regarding the FVRA, the parties have disputed its precise application to USADF. Section 3348 states, in relevant part, that an office not filled consistent with the FVRA "shall remain vacant," and "[a]n action taken by any person who is not acting under section 3345, 3346, or 3347, or as provided by subsection (b), in the performance of any function or duty of a vacant office to which this section and sections 3346, 3347, 3349, 3349a, 3349b, and 3349c apply *shall have no force or effect*." 5 U.S.C. § 3348(b)(1), (d)(1) (emphasis added). Those actions "may not be ratified." *Id.* § 3348(d)(2). Accordingly, "actions taken by persons serving in violation of the [FVRA are] void ab initio. *SW Gen., Inc. v. N.L.R.B.*, 796 F.3d 67, 70–71 (D.C. Cir. 2015), *aff'd*, 580 U.S. 288 (2017).

I agree with plaintiffs that the FVRA's remedial language in § 3348(d)(1) applies to USADF. *See Aviel*, 2025 WL 2374618, at *9 ("Section 3348(d)(1), which nullifies all actions taken by improperly appointed officers, expressly applies to 'vacant office[s] to which . . . [Section] 3349c appl[ies].'" (alteration in original) (quoting 5 U.S.C. § 3348(d)(1)). "Read in context and reduced to its simplest terms, 'acting' officers who are not appointed through the FVRA's acting-appointment provisions lack authority to 'perform any function or duty of a vacant office.'" *Id.* (cleaned up).

The FVRA's remedial language encompasses Marocco's actions taken in his capacity as a Board member and president of USADF. The FVRA defines "function or duty" as "any function or duty of the applicable office that . . . is established by statute," and "is required by statute to be performed by the applicable officer," or "is established by regulation," and "is required by such regulation to be performed by the applicable officer." 5 U.S.C. § 3348(a)(2). The USADF statute specifies that the "management of the

Foundation shall be vested in" the Board, 22 U.S.C. § 290h-5(a)(1), and regulations further state that the "Board establishes policy for the Foundation and is responsible for its management," 22 C.F.R. § 1501.3(a); *see also id.* § 1501.3(b) ("The President has responsibility for directing the day to day activities of the Foundation."). Marocco's actions in "establish[ing] policy for" and "managing" USADF are thus in the "function or duty" of a USADF Board member. 22 C.F.R. § 1501.3(a); 5 U.S.C. § 3348(d)(1)).

Defendants argue that "action" in the FVRA refers only to "agency action[s]" under the APA, so "not . . . all actions taken by such an official are automatically null and void." Defs.' Reply in Supp. of Mot. to Modify [Dkt. #33] at 4. The FVRA, however, provides that "'action' *includes* any agency action as defined under" the APA. 5 U.S.C. § 3348(a)(1) (emphasis added). The use of "includes" instead of "means" shows that "action" in the FVRA is not limited to "agency action[s]." *Id.*; *see Nw. Ass'n of Indep. Schs. v. Labrador,* 166 F.4th 1148, 1161 (9th Cir. 2026) ("'[W]here "means" is employed, the term and its definition are to be interchangeable equivalents,' whereas 'the verb "includes" imports a general class, some of whose particular instances are those specified in the definition.'" (quoting *Helvering v. Morgan's, Inc.,* 293 U.S. 121, 125 n.1 (1934))).

As such, the FVRA provides a basis for declaratory relief that Marocco's actions in the "function or duty" of a USADF Board member and president "have no force or effect." *Id.*; *see also Widakuswara v. Lake,* No. 25-cv-1015, slip op. at 16–17 (D.D.C. Mar. 7, 2026) (holding that unlawfully appointed officer's "actions taken" were "void").

## B.    Injunctive Relief

The Court previously granted defendants' request to narrow the scope of the

preliminary injunction after *Trump v. CASA, Inc.*, 606 U.S. 831 (2025). Now that I have considered the full scope of plaintiffs' claims, as well as the factual developments in this case, I have concluded that plaintiffs' requested injunctive relief is proper.

To obtain a permanent injunction, the plaintiff "must demonstrate '(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.'" *Anatol Zukerman & Charles Krause Reporting, LLC v. U.S. Postal Serv.*, 64 F.4th 1354, 1364 (D.C. Cir. 2023) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). "When the defendant is the government, factors (3) and (4) merge." *Id.*

The Court previously found that RDI had demonstrated irreparable injury, which suffices for purposes of permanent injunctive relief. *See RDI*, 2025 WL 1807818, at *6. Beyond RDI's economic injuries, RDI is also suffering harm because defendants have, in essence, compelled RDI to submit to interactions with an unconstitutionally appointed actor. *Cf. Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 212 (2020) (unconstitutional removal restriction "inflicts a here-and-now injury on affected third parties" (internal quotation marks omitted)). Defendants do not dispute that Marocco has blocked all USADF employees from accessing USADF's offices and systems. *See generally* Defs.' Opp'n to Pls.' Mot. to Reconsider [Dkt. #40]. RDI has thus been unable to receive guidance on its implementation of the grant or to carry out its regular activities in partnership with USADF. Mot. to Reconsider, Ex. B, Decl. of Victor Makasa ("Second

Makasa Decl.") [Dkt. #36-2] ¶¶ 6–7, 11–12.   Monetary damages are inadequate to compensate RDI for these ongoing harms.  *Cf. Aviel*, 2025 WL 2374618, at *17 ("A paycheck . . . [will not] guarantee the continued existence of [plaintiff's] role or the agency in a spectral state.").

The balance of hardships and the public interest also favor granting a permanent injunction.   Defendants have no legitimate interest in perpetuating the unlawful appointment of a USADF Board member and president.  *See RDI*, 2025 WL 1807818, at *6.  And the public interest is served by enforcing the constitutional and statutory guardrails around appointments.  *See League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) ("[T]here is a substantial public interest 'in having governmental agencies abide by the federal laws that govern their existence and operations.'" (quoting *Washington v. Reno*, 35 F.3d 1093, 1103 (6th Cir. 1994)).

Defendants' arguments in favor of limiting injunctive relief to only plaintiffs fail for the following reasons.

*First*, *CASA* did not squarely address the proper scope of equitable relief for the unconstitutional exercise of power by a person unlawfully appointed—as opposed to enforcement of an unconstitutional statute.  *See CASA*, 606 U.S. at 837 ("prohibit[ing] enforcement of a law or policy against anyone . . . likely exceed[s] the equitable authority that Congress has granted to federal courts" (emphasis omitted)); *see also, e.g.*, *United States v. Jefferson*, __ F. Supp. 3d __, 2026 WL 145277, at *5 (E.D. Va. Jan. 20, 2026) (distinguishing *CASA* in the appointments context).

*Second*, the unique facts of this case strongly suggest that "complete relief," *CASA*,

606 U.S. at 850, for plaintiffs requires an injunction against Marocco from acting as a USADF Board member and president. According to the undisputed facts, RDI "relies on USADF for more than payments of invoices." Second Makasa Decl. ¶ 4. "Ordinarily, RDI interacts with USADF staff on a daily basis." *Id.* This is because USADF "must be able to perform portfolio management and oversight, including soliciting and reviewing quarterly reports from grantees, as well as reviewing disbursement requests, site-visit reports, project audits, work plans and performance assessments, implementation-related amendments, and close outs." Pls.' PI Br. at 10.

Since I narrowed the preliminary injunction, Marocco has blocked all other USADF employees from accessing USADF systems and has sought to terminate the remaining two USADF employees with management authority. *See* Mot. to Reconsider at 3–4; Notice of Factual Developments at 1–2. While Marocco insists that he has "personally reached out to all known RDI contact information" himself, forcing RDI to conduct all of its grant management through an unlawfully appointed actor amounts to requiring RDI to be "regulated by an unconstitutionally structured agency," which only compounds RDI's harms! *John Doe Co. v. Consumer Fin. Prot. Bureau*, 849 F.3d 1129, 1135 (D.C. Cir. 2017) (Kavanaugh, J., dissenting).

Indeed, it has proven to be unworkable to isolate Marocco's actions that affect plaintiffs from his actions that do not affect plaintiffs. *See* Pls.' Statement on Relief at 3 ("[T]o ensure that Marocco could not continue to wield that power as to Plaintiffs, the Court would also have to determine what structures, employees, contracts, and systems are necessary so that Plaintiffs would not be subjected to Marocco's illegal authority in the

future."). While an order prohibiting Marocco from acting as USADF president moving forward may "incidentally" benefit "nonparties," any incidental effects should not limit the Court from providing complete relief to plaintiffs. *CASA*, 606 U.S. at 851.

*Third*, the remedy prescribed by the FVRA suggests that the scope of plaintiffs' requested relief is correct. The FVRA specifically provides that "an action taken by" someone acting without authority under the FVRA, so long as that action is "in the performance of any function or duty" of the office, "shall have no force or effect." 5 U.S.C. § 3348(d)(1). Congress may authorize remedies that may be unsupported by "background equitable principles." *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 838 (2024) (Kavanaugh, J., concurring) (explaining why vacatur of an unlawful agency rule is proper under the APA, as opposed to enjoining enforcement of the rule against the plaintiff). While, for the reasons stated above, plaintiffs' requested relief is consistent with equitable principles, Congress's authorization of a broad remedy in the FVRA underscores the propriety of that relief here. I will therefore enjoin Marocco from acting as a Board member or president of USADF and will enjoin defendants (excluding the President) from implementing or giving effect to Marocco's directives in those capacities.

## CONCLUSION

For the foregoing reasons, plaintiffs' summary judgment motion is **GRANTED** in part and **DENIED** in part, and defendants' summary judgment motion is **GRANTED** in part and **DENIED** in part. Plaintiffs' motion to reconsider [Dkt. #36] is **DENIED** as moot. An accompanying order will issue contemporaneously with this opinion.

RICHARD J. LEON
United States District Judge