**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **Rural Development Innovations Limited** *et al.*,<br><br>      Plaintiffs,<br><br>**v.**<br><br>**Pete Marocco** *et al.*,<br><br>      Defendants. | **Civil Case No. 25-cv-1631** |

**OPPOSITION TO MOTION TO CLARIFY AND RESPONSE TO
DEFENDANTS' STATUS REPORT**

Defendants are making a mockery of this Court's authority. Thirty-three days ago, the Court ordered Defendants to stop treating Pete Marocco as the head of USADF, to stop giving effect to his illegal orders, and to undo the damage they did. Defendants are largely ignoring that order. They are still giving effect to Marocco's orders and refusing to restore USADF employees' access to USADF's offices, IT systems, and financial systems. Instead of following the Court's order, Defendants waited until the eve of the Court-ordered status report to tell the Court that, in their view, following the order to undo their illegal actions would violate that very order. And in their status report, Defendants provide a single conclusory sentence to assert without any details that they are following the remainder of the Court's order. Defendants' factual representations to the Court are false and their legal arguments are spurious. The Court should reject them in the strongest terms possible.

1

## FACTUAL DEVELOPMENTS

As explained in Plaintiffs' motion to reconsider modification or, alternatively, to enforce, last November and December, Defendants shut off all USADF employee access to USADF's office, financial systems, and IT systems. *See* ECF No. 36 at 3-4. Without employees having that access, Plaintiffs cannot be returned to the positions they were in before Marocco's illegal appointment, *see id.*, and USADF cannot function, *see* Ex. A, Feleke Decl. ¶ 3.

In the month since the Court's March 13 order, USADF staff have not been able to access the agency's IT or financial systems. *Id.* Marocco continues to be the global administrator of USADF's IT. *Id.* at ¶ 4. USADF staff have sent Microsoft over 60 emails asking for control over USADF's IT, including its email system, to be transferred back to the agency's management. *Id.* at ¶ 5. Microsoft has informed USADF leadership that it has attempted to contact Marocco, in accordance with Microsoft's security protocols, to authorize transfer of control. *Id.* Marocco has not responded. *Id.*

Without access to USADF's IT systems, agency leadership cannot restore the USADF website, which Defendants previously deleted most of. *Id.* at ¶¶ 6-7. Defendants replaced the USADF website with a single homepage that contains links to USADF emails and a form to submit payment requests. *Id.* at ¶ 6. Since March 27, USADF have sent daily emails to the Cybersecurity & Infrastructure Security Agency, and the only response USADF staff have received is that the agency is reviewing the Court's order and will provide an update at some unknown time in the future. *Id.* at ¶ 7. As a result, unless Marocco transfers control of USADF's IT,

USADF staff is unable to republish the USADF website. *Id.* at ¶¶ 4-6. And because staff have no access to USADF's IT, they cannot see or respond to any emails or payment requests submitted through the current website. *Id.* at ¶ 6.

What's more, government agencies, including Defendant Department of Treasury, will not respond to emails from staff that do not come from official usadf.gov email addresses. *Id.* at ¶ 8. Only one member of staff—the Acting Chief Financial Officer, a member of the Management Committee—still has access to his USADF email address. *Id.* at ¶ 9. He has sent multiple emails (and a letter on official USADF letterhead) to Treasury requesting, among other things, updates on contracts that Marocco attempted to cancel. *Id.* Treasury has not responded. *Id.*

When USADF employees were able to regain access to the physical USADF office on March 18, they learned that the damage was worse than expected. *Id.* at ¶ 11. While waiting for this Court's final judgment, Defendants ripped out all computers, servers, and office equipment—leaving only employees' personal effects in boxes. *Id.*; *id.* at 6-8. USADF leadership contacted Defendants' counsel multiple times, requesting information about the missing equipment. *Id.* at ¶¶ 12-13. His only response was that he had sent the Court's order to the White House. *Id.* at ¶ 12.

In the two days after filing a status report informing this Court that Defendants were no longer giving effect to any of Marocco's orders, Treasury nonetheless executed (at least) three of Marocco's orders. On April 14, one of USADF's contractors—a Country Program Coordinator in Nigeria—received a contract evaluation notice from the Treasury Department to permanently close out his contract. *Id.* at ¶ 16. His

contract was previously set to end in June 2027, but Marocco canceled it. *Id.* In its notice, Treasury listed the end date of his contract as February 2, 2026, *id.*, a time when Marocco was still exerting control over USADF. On April 15, at least two other Country Program Coordinators received the same contract closeout notices from an official at Treasury, both listing contract end dates in February 2026, when Marocco cancelled the contracts. *Id.* at ¶¶ 17-18.

## ARGUMENT

**1.** In their April 13 status report, Defendants explain, without any detail whatever, that they "are not implementing or giving effect to any directive, order, or action taken by Marocco pursuant to his alleged authority as Chair of the Board or president of the Foundation." ECF No. 49. That is simply untrue.

For example, Marocco made himself the global administrator of all USADF's IT systems. Since the Court's order, he has continued to give effect to that action by ignoring attempts by Microsoft to contact him so that control can be transferred back to USADF staff. Without his approval, USADF staff cannot access the systems required to make the agency run. Marocco also terminated USADF staff's access to their emails. Other Defendants, including Department of Treasury, have refused to acknowledge email communications from USADF leadership that do not come from the usadf.gov emails, which staff cannot access as a result of Marocco's actions.

The sole employee with access to his usadf.gov email is one of the members of the Management Committee, the rightful leadership of USADF. He has contacted Defendant Treasury multiple times (including by letter on official USADF letterhead) requesting information on returning the agency to normal functioning and asking

Treasury to reverse contract terminations enacted by Marocco. Treasury has not responded.

Worse yet, Treasury is still actively implementing Marocco's attempts to cancel USADF contracts. On April 14 and 15, the two days after Defendants filed their status report, Treasury sent contract closeout notices to at least three of USADF's contractors. Two of the contracts were not set to expire until 2027, but Marocco cancelled them early.[1] Defendant Treasury listed as the contract end dates as February 2026, thus continuing to give effect to Marocco's contract terminations.

**2.** Instead of outlining any good-faith attempts to implement the Court's order, Defendants ask the Court to excuse their blatant noncompliance—styled as a motion to clarify. But "motions for clarification have a limited role." *Steele v. United States*, No. 1:14-CV-1523-RCL, 2023 WL 6215790, at *5 (D.D.C. Sept. 25, 2023). They should be filed only to seek "to explain or clarify something ambiguous or vague, not to alter or amend." *Id.* (quoting *United States v. Philip Morris USA Inc.*, 793 F. Supp. 2d 164, 168 (D.D.C. 2011)). And this Court's order was perfectly clear. Because Marocco was not lawfully appointed, he has no authority to run USADF and his actions were void and of no effect. *See* 5 U.S.C. § 3348(d).

Defendants argue that, under the logic of the Court's order they seek to undermine, they cannot rectify their actions because they "lack authority to take any action to manage" USADF. Mot. 3. Nonsense. The Court did not order Defendants to

---

[1] The third contract was set to expire in March 2026, but USADF leadership were in the process of discussing a contract renewal before Marocco cancelled the contract in February. Ex. A, Feleke Decl. ¶ 17.

manage USADF in any way. It ordered Defendants to return to USADF staff what Defendants had themselves taken away—access to USADF systems and USADF equipment. The Court was well within its power to order Defendants to undo what they have done. *Cf. Brown v. Plata*, 563 U.S. 493, 538 (2011) ("The scope of a district court's equitable powers is broad, for breadth and flexibility are inherent in equitable remedies." (cleaned up)).

Defendants likewise argue that because they lack legal authority to manage USADF, any actions they take to follow the Court's order would be ultra vires and final agency actions subject to APA review. Mot. 4. But ultra vires means "beyond the scope of power allowed or granted . . . by law." Ultra Vires, Black's Law Dictionary (12th ed. 2024). Certainly following a court order is within the scope of power allowed by law. And Defendants do not provide any legal support for (or explanation of) their novel theory of voiding court orders under the APA. We are aware of none.

Beyond their novel legal attempts to wash their hands of their own actions, Defendants fail to provide any facts supporting their supposed inability to facilitate the return of USADF systems and equipment to USADF employees. And as already explained, it's just not true. For example, Marocco is ignoring requests to relinquish control over USADF's systems. Indeed, Defendants' own motion (at 4) implies that Marocco *can* provide the required relief: "[N]one of the Defendants *other than Marocco* has access to the Foundation's buildings or financial and IT systems, much less the ability to grant such access to others." (emphasis added). And Treasury is not only refusing to undo Marocco's contract cancellations—despite requests from

USADF leadership, *see* Ex. A, Feleke Decl. ¶ 9—it's still actively implementing them, *id.* ¶¶ 16-18.[2]

Defendants' practical argument is further undercut by the fact that they have turned over control of USADF once before. When the Court issued its preliminary injunction, Defendants indicated that they worked with Defendants' Counsel to return control of USADF to its rightful leadership and staff. *See* Ex. A, Feleke Decl. ¶ 19. There is no reason that they cannot do so again.

## CONCLUSION

Although Marocco is no longer claiming to be USADF's President and sole Board member, Defendants have ignored the bulk of the Court's order. USADF is still utterly unable to function as a result of Marocco's actions. And Defendants' unwillingness to do anything to reverse those actions (or even stop implementing them) is plain defiance of this Court's authority. This Court should deny the motion and order Defendants to comply with its order immediately. Plaintiffs are filing a contemporaneous motion for an order to show cause and an emergency status conference.

---

[2] To the extent that Defendants worked in concert with other non-Defendant agencies to implement Marocco's orders—an argument that Defendants do not make—that would not get them off the hook. Court orders bind "other persons who are in active concert or participation" with Defendants. Fed. R. Civ. P. 65(d)(2)(C). And Defendants worked with those agencies to implement Marocco's orders. *See, e.g.*, Ex. A, Feleke Decl. ¶¶ 14-15. They could not now pretend that implementation of Marocco's orders are the unrelated acts of third parties for which they bear no responsibility.

April 15, 2026

Respectfully submitted,

_/s/Bradley Girard_____
Bradley Girard (DC Bar No. 1033743)
Joel McElvain (DC Bar No. 448431)
Robin F. Thurston (DC Bar No. 1531399)
Skye Perryman (DC Bar No. 984573)
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
bgirard@democracyforward.org
jmcelvain@democracyforward.org
rthurston@democracyforward.org
sperryman@democracyforward.org

*Counsel for Plaintiffs*