# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **Rural Development Innovations Limited** *et al.*<br><br>Plaintiffs,<br><br>**v.**<br><br>**Pete Marocco** *et al.*,<br><br>Defendants. | **Civil Case No. 25-cv-1631** |

**DECLARATION OF ELISABETH FELEKE**

I, Elisabeth Feleke, declare under penalty of perjury, under 28 U.S.C. § 1746, that the following is true and correct:

1. I am the Chief Program Officer at the United States African Development Foundation (USADF).

2. I am one of three members of USADF's Management Committee—put in place by the former Board of Directors to lead USADF until a permanent President and CEO is hired.

3. In the month since this Court's March 13 order, USADF employees have not been able to regain access to USADF's office equipment or its systems—including its IT and financial systems. As a result, we have not been able to carry out the agency's required functions.

4. Pete Marocco continues to retain the role of global administrator over all USADF IT systems, including email and the USADF website.

1

5.      Since March 17, USADF leadership has sent daily communications to Microsoft requesting that control of USADF's IT systems be transferred from Marocco (and SCAR, LLC, a company Marocco contracted to do administrative functions on his behalf) back to the USADF Chief Information Officer. Agency staff have sent more than 60 emails to Microsoft administrators, without resolution. Microsoft staff have informed us that they have emailed the addresses Marocco provided as the global administrators at least 3 times to verify and authorize the transfer of control to USADF staff in accordance with Microsoft security protocol. Microsoft never received any response.

6.      Before the Court's March 13 order, Defendants removed almost the entire USADF website—leaving only a front page (at www.usadf.gov) that contains links to official USADF email addresses and an online form for invoice, rent, or payment requests. USADF staff do not have access to those emails or the forms submitted through the website. As a result, USADF is not able to communicate with grantees, partners, contractors, and more. And USADF is not able to access requests for payments submitted through the website.

7.      Since March 27, USADF staff have sent daily emails to the Cybersecurity & Infrastructure Security Agency requesting assistance to access the usadf.gov domain to facilitate staff access and control. The only response we received stated that the request is under review and that an update would be forthcoming.

8.      Other agencies and departments, including Treasury and the Office of Management and Budget, have refused to recognize emails on behalf of the agency

that do not come from official agency email addresses—email addresses that all but one member of the USADF staff cannot access.

9.      Before the Court's March 13 order, Defendants allowed only one member of USADF's staff—the Acting Chief Financial Officer, one of the members of the Management Committee—to retain access to USADF's email system. As the sole staff member with an official email account, the Acting CFO sent multiple messages to Treasury officials requesting updates on contracts and information regarding actions taken by Marocco, but received no response. The Acting CFO also sent a formal letter, on USADF letterhead, requesting that Treasury reverse any contract terminations issued by Marocco and grant USADF staff access to the USADF payment systems. Treasury has not responded to the letter.

10.     USADF staff have not been given access to USADF's systems for making payments. As a result, USADF has not been able to make payments that are overdue, including to grantees, partners, and contractors.

11.     On March 18, USADF staff regained access to our offices and found them completely emptied of furniture and IT equipment, with the IT server room destroyed. All that remained were employee personal effects, which had been put into boxes and stacked in one room. I have attached at the end of this declaration true and correct copies of photos that I took in the USADF office on March 18.

12.     On both March 18 and 20, USADF's Acting General Counsel called Defendants' counsel, John Bardo, and requested that he contact Defendants to determine where they sent USADF's equipment. Bardo informed the General

Counsel that he sent the Court's order to the White House, but did not provide any answer as to where USADF's equipment was.

13. On April 6, I emailed Bardo from my personal email (because I still don't have access to my USADF email), asking for assistance with USADF staff's online access. I did not receive any response.

14. I am aware that in his time acting as USADF President, Marocco worked with the Department of the Interior (and its Interior Business Center), the Department of Treasury, and the Office of Personnel Management, all of which implemented various directives and orders from Marocco.

15. I have also learned from the Cybersecurity & Infrastructure Security Agency that the Office of Management and Budget provides clearance for transfers of government domain names. USADF IT staff have informed me that Marocco could not have taken over usadf.gov without working with OMB.

16. On April 14, I was contacted by one of our Country Program Coordinators in Nigeria—a contractor that works for USADF. On April 14, he received a contract evaluation notice from an Assessing Official at the Treasury Department to permanently close out his contract, listing his contract closing date as February 2, 2026. His original contract with USADF ran until June 2027, but was cancelled by Marocco in February 2026.

17. On April 15, I was contacted by one of our Country Program Coordinators in Kenya—a contractor that works for USADF. On April 15, she received a contract evaluation notice from an Assessing Official at the Treasury

Department to permanently close out her contract, listing her contract closing date as February 3, 2026. Her original contract with USADF ran until March 2026, but we were discussing contract renewal before Marocco cancelled the contract in February 2026.

18.    On April 15, I was contacted by one of our Country Program Coordinators in Côte d'Ivoire—a contractor that works for USADF. On April 15, he received a contract evaluation notice from an Assessing Official at the Treasury Department to permanently close out his contract, listing his contract closing date as February 2, 2026. His original contract with USADF ran until April 2027, but was cancelled by Marocco in February 2026.

19.    When the Court issued its preliminary injunction in July 2025, USADF leadership encountered similar challenges reversing actions Defendants had taken to stop USADF operations. Despite the practical difficulties staff faced in undoing Defendants' actions, the Departments of Treasury and the Interior indicated that they worked with Defendants' counsel to determine the appropriate steps for compliance. Defendants ultimately restored access to USADF staff to the USADF office and IT and financial systems.

Washington, DC                                          /s/ Elisabeth Feleke
April 15, 2026                                          Elisabeth Feleke

**PHOTOGRAPH 1: USADF SERVER ROOM, MARCH 18, 2026**



**PHOTOGRAPH 2: USADF OFFICE, MARCH 18, 2026**



## PHOTOGRAPH 3: USADF OFFICE, PERSONAL EFFECTS, MARCH 18, 2026

