UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RURAL DEVELOPMENT INNOVATIONS LIMITED et al.,<br><br>Plaintiffs,<br><br>v.<br><br>PETER MAROCCO et al.,<br><br>Defendants. | Civil Action No. 25-1631 (RJL) |

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO CLARIFY AND IN OPPOSITION TO PLAINTIFFS' MOTION TO SHOW CAUSE**

Defendants are various government components and officials sued in their official capacities. They respectfully submit this reply in further support of their motion to clarify (ECF No. 48) and in opposition to Plaintiffs' motion to show cause (ECF No. 51). A proposed order is attached hereto.

Although Plaintiffs are frustrated that Defendants have not granted U.S. Africa Development Foundation employees access to Foundation offices, IT systems, and financial systems, Plaintiffs' frustration does not give the named Defendants the authority to perform an act that they lack the authority or ability to perform. The Supreme Court has cautioned lower courts against "undue judicial interference with [agencies'] lawful discretion" and "injecting the judge into day-to-day agency management." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 66–67 (2004). The Executive Branch has primary responsibility for "tak[ing] care that the Laws be faithfully executed." U.S. Const. Art. II, § 3. Ordering Federal agencies to perform acts that they lack the authority to take would be an abuse of discretion. *See Trump v. CASA, Inc.*, 606 U.S. 831,

861 (2025) ("When a court concludes that the Executive Branch has acted unlawfully, the answer is not for the court to exceed its power, too.").

Notably, neither Plaintiffs' opposition (ECF No. 50) nor their Motion to Show Cause (ECF No. 51) identifies a statute or regulation that would give any of the named Defendants the authority to grant access to Foundation IT and financial systems and buildings to these employees. The only statute vesting anyone with any authority to "manage" the Foundation is the Foundation's organic statute, which vests that authority with the Board of Directors. 22 U.S.C. § 290h-5(a). As the entity tasked with managing the Foundation, only the Board would have the authority to give any individual access to the Foundation's office space, IT Systems or financial systems. See Manage, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/manage?src=search-dict-hed (defining manage as "to exercise executive, administrative, and supervisory direction of"). But as explained in Defendants' opening motion, *see* ECF No. 48 at 2-3, aside from the designation of Marocco, which the Court determined was unlawful, the Foundation has not had a Board since February 2025. It would be especially inappropriate for the Court to require Defendants to grant sweeping systems access (that they have no power or ability to grant) to employees who are not themselves supervised by any lawfully appointed authority, given the President's general power under Article II to "supervise . . . those who exercise power on his behalf." *Trump v. United States*, 603 U.S. 593, 608 (2024).

Because Peter Marocco has been enjoined from taking any actions as the Chair of the Board or president of the Foundation absent a lawful appointment under Article II of the U.S. Constitution, Marocco no longer has access to the Foundation's IT or financial systems. Order at 2 (ECF No. 47). To be sure, Plaintiffs named the Secretary of the Treasury as a Defendant, *see generally* Compl., and the Department of the Treasury has submitted two declarations that describe

its efforts to comply with the Court's order. See generally Ex. 1, Davis Decl.; Ex. 2, Pickens Decl. Treasury's Center for Financial Management ("CFM") provides reporting and accounting services to the Foundation and disburses payments on behalf of the Foundation, and Treasury's Common Services Center ("TCSC") administers the Foundation's contracts. Ex. 1, Davis Decl. ¶ 2. In order to obtain financial management services from CFM, the Foundation must enter into an Interagency Agreement with Treasury, but there is no Interagency Agreement between Treasury and the Foundation for FY 2026. *Id.* ¶ 4. The lack of an Interagency Agreement prevents CFM from disbursing any payments on behalf of the Foundation. *Id.* ¶ 4, 14.

Crucially, before disbursing a payment for the Foundation or taking any action to administer a contract, CFM or TCSC must receive approval from the Foundation's head or his or her designee. *Id.* ¶ 5; Ex. 2, Pickens Decl. ¶ 4. On February 23, 2026, before the Court permanently enjoined Marocco from leading the Foundation, Marocco had designated Anthony Tweneboah-Koduah as the Foundation's acting Chief Financial Officer, but Marocco reserved for himself the authority to approve disbursements. Ex. 1, Davis Decl. ¶ 8. On March 16, 2026, three days after the Court entered the permanent injunction, Tweneboah-Koduah contacted Treasury requesting "the immediate restoration and access to the contract and financial systems to enable the full administrative functions of the United States African Development Foundation. Specifically, we request the same access levels as we had on December 11, 2025." *Id.* ¶ 10. But Treasury cannot recognize Tweneboah-Koduah as the acting CFO because the Court's order invalidates all of Marocco's actions, including his decision to name Tweneboah-Koduah as the acting CFO. Ex. 2, Pickens Decl. ¶ 10. Since the Court's Order, TCSC has been awaiting instructions concerning which Foundation officials are authorized to approve contract-related actions, *Id.* ¶ 9, but there are no such officials at this time, as the Foundation lacks a Board or any

other person or entity that can lawfully enter into contracts on its behalf. TCSC cannot take contract-related directions from the Foundation until someone with lawful authority over the Foundation identifies an authorized official who has the lawful power to engage in contract-administration processes. *Id.*

Treasury has received emails from Elisabeth Feleke, who purports to be the Foundation's Chief Program Officer, and Bailey Dowling, who purports to be the Foundation's acting general counsel, seeking access to the Treasury payment system. Ex. 1, Davis Decl. ¶¶ 10, 12. But these emails came from Feleke and Dowling's personal email addresses, and Treasury cannot conduct government business or have discussions of government financial transactions with anyone using a non-government address. *Id.* ¶ 13; Ex. 2, Pickens Decl. ¶ 11. Treasury has not been able to confirm that Feleke and Dowling are Foundation officials with authority to bind the Foundation in financial dealings in the absence of a lawfully appointed Board. Ex. 2, Pickens Decl. ¶ 11.

Moreover, Plaintiffs' representations that Treasury has canceled contracts are incorrect. Opp'n at 3-4. Plaintiffs are correct that three Foundation contractors received Contractor Performance Assessment Reports, but these reports are not sent to terminate or close out contracts, but rather they are documents that Treasury sends to contractors after a contract ends. *Id.* ¶ 12. Treasury has since retracted the reports. *Id.* ¶ 13.

Plaintiffs' arguments fare no better as to the Department of the Interior. The Interior Business Center ("IBC") has provided payroll and human resources services to the Foundation in the past on a fee-for-service basis. Ex. 3, O'Neill Decl. ¶ 2. However, neither IBC nor Interior Secretary Doug Burgum has the authority to direct actions at customer agencies. *Id.* ¶ 3. Rather IBC relies on lawfully appointed leadership at the customer agency to provide such direction, and IBC may not take actions at the Foundation in the absence of lawfully-appointed Foundation

leadership. *Id.* ¶¶ 3-5. Further, as a practical matter, IBC does not have access to the Foundation's offices, IT systems, or financial systems, and lacks the ability to grant such access to others. *Id.* ¶¶ 6-7.

Finally, Defendants did not give any former Foundation employees access to the building and IT systems in response to the Court's July 1, 2025 order. See ECF No. 27. The former employees likely obtained access to the IT systems directly from Microsoft and access to the Foundation's office space directly from the landlord. Notably, the July 1 order did not contain the same directive more recently ordered regarding access to office space, IT systems and financial systems. *Id.* The July order simply preliminarily enjoined Defendants from "implementing or giving effect to directives from Marocco that he took in the capacity as acting chairperson of [the Foundation's] Board of Directors and president of [the Foundation]." *Id.* Defendants complied with that directive, and did so again in response to the permanent injunction entered on March 13, 2026. Ex. 1, Davis Decl. ¶ 14.

**CONCLUSION**

Accordingly, for these reasons, and the reasons stated in Defendants' motion to clarify, the Court should grant Defendants' motion to clarify and deny Plaintiffs' motion to show cause.

Dated: April 22, 2026
Washington, DC

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: *\/s/ John J. Bardo*
JOHN J. BARDO, D.C. Bar #1655534
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-0879

*Attorneys for the United States of America*